E-FILED
Friday, 10 August, 2018 02:34:17 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT
SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

**SUMMONS IN A CIVIL CASE**

CTF ILLINOIS f/k/a CHARLESTON
TRANSITIONAL FACILITY, an Illinois
not-for-profit corporation,

CASE NUMBER:   **2018L 000126**

V.

ASSIGNED JUDGE:

WESCO INSURANCE COMPANY,

JURY DEMAND

TO: (Name and address of Defendant)

Wesco Insurance Company
c/o Amtrust Financial Services, Inc.
233 N. Michigan Avenue
Chicago, Illinois 60601

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Rathje Woodward LLC
300 E Roosevelt Road
Suite 300
Wheaton, Illinois 60187

an answer to the complaint which is herewith served upon you, _____30_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

7/23/2018

_~~Katie M. Bladucer~~_ BP

**EXHIBIT 1**



## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
            Date                    *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



FILED
SIXTH JUDICIAL CIRCUIT
7/20/2018 1:40 PM
By: BP

*Katie M. Blackard*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

**IN THE CIRCUIT COURT**
**SIXTH JUDICIAL CIRCUIT**
**CHAMPAIGN COUNTY, ILLINOIS**

CTF ILLINOIS f/k/a CHARLESTON )
TRANSITIONAL FACILITY, an Illinois )
not-for-profit corporation, )
)
         Plaintiff, )
) Case No.: **2018L 000126**
   v. )
)
WESCO INSURANCE COMPANY, ) Jury Demanded
)
         Defendant. )

## COMPLAINT

Plaintiff, CTF Illinois, formerly known as Charleston Transitional Facility ("CTF Illinois"), by its attorneys Rathje Woodward LLC, and for its complaint against the defendant, Wesco Insurance Company ("Wesco"), alleges as follows:

### Introduction

1.     In this breach of contract action, CTF Illinois seeks to recover excess premium improperly charged by Wesco on two workers compensation insurance policies. The overpayments were caused by Wesco's incorrect use of the "Schedule Rating" factor in its computation of the premiums for the policies.

2.     At the time of the insurance contracts, Illinois law prescribed certain rules that governed Wesco's calculation and use of the Schedule Rating factor. However, Wesco did not comply with those rules. As a consequence, Wesco employed Schedule Rating debits that were both improper and incorrect.



3. CTF Illinois therefore seeks a refund of the excess premium it paid to Wesco as a result of Wesco's improper use of Schedule Rating debits, and other remedies authorized by law, including pre-judgment interest.

### The Parties and Venue

4. Plaintiff, CTF Illinois, f/k/a Charleston Transitional Facility, is an Illinois not-for-profit organization with its principal place of business in Champaign, Illinois.

5. CTF Illinois is dedicated to empowering individuals with developmental disabilities through services and programs that help them reach their potential in an environment that fosters respect, dignity, and success for each individual.

6. Defendant, Wesco Insurance Company, is a foreign insurance company and a member company of American Trust North America, with its executive offices at 500 Enterprise Drive, Suite 3C, Rocky Hill, Connecticut 06067.

7. Venue is proper in this county under 735 ILCS 5/2-101(2) because the transaction out of which this action arose, or some part thereof, occurred in Champaign County, Illinois.

### Wesco And Synergy

8. CTF Illinois purchased three consecutive workers' compensation policies that were underwritten by a general managing agent known as Synergy Coverage Solutions, LLC ("Synergy").

9. Synergy, as the managing producer for Wesco, had authority to underwrite the approved business on behalf of Wesco.

10. The first policy underwritten by Synergy was issued on Wesco paper as policy WWC 3005100 having a policy period of July 1, 2009 to July 1, 2010 (the "2009 Policy").

11. The 2009 Policy was underwritten by Derek Killian, a Synergy employee.

2



12.    The second policy underwritten by Synergy was issued on Wesco paper as policy WWC 3013879 having a policy period of July 1, 2010 to July 1, 2011 (the "2010 Renewal").

13.    The 2010 Renewal was underwritten by Kathy Wolf, a Synergy employee.

14.    The third policy underwritten by Synergy was issued on Associated Insurance Company paper as policy WC522-000085-111 having a policy period of July 1, 2011 to July 1, 2012 (the "2011 Renewal").

15.    The 2011 Renewal was underwritten by Kathy Wolf, who also underwrote the 2010 Renewal.

16.    The 2009 Policy, the 2010 Renewal and the 2011 Renewal (referred to collectively as the "Policies") provided workers compensation and employers' liability coverage for CTF Illinois' operations in Illinois.

17.    Attached as Exhibits A and B are the relevant portions of the 2009 Policy and the 2010 Renewal, respectively.

### The Policy Terms

18.    The Policies incorporate by reference a variety of manuals, rules, classifications and rating plans.  The pre-printed policy form provides:

> All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications.  We may change our manuals and apply the changes to this Policy if authorized by law or a governmental agency regulating this insurance.

19.    Likewise, the Information Page for each Policy provides:

> The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.  All information required below is subject to verification and change by audit.

20.    The references in the Policies to the "Manuals of Rules, Classifications, Rates and Rating Plans" includes Wesco's Schedule Rating Plan for Illinois.

3



21.    The premium for a workers' compensation policy is calculated at least twice: first before the policy goes into effect, which is known as the "estimated premium;" and second, after the policy expires, which is known as the "final premium."

22.    The Policies explain the distinction between the "estimated premium" and the "final premium" as follows:

> The premium shown on the Information Page, schedules and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you.

23.    The estimated premium is set forth in Section 4 of the Information page of each Policy and each element of the estimated premium calculation is "subject to verification and change by audit."

24.    As per the payment schedule in the Information Page, CTF Illinois paid the estimated premium while the 2009 Policy and the 2010 Renewal were in effect. (Exhibit A at 3; Exhibit B at 6).

25.    After each Policy expired, Wesco performed an audit and calculated the final premium, which was supposed to be calculated using verified rates, factors and values.

26.    In addition to the Policies, 215 ILCS 5/462b required Wesco to "apply correct classifications, payrolls and other factors of a rating system to compute premiums" when calculating the final premium, which included Wesco's Schedule Rating Plan.

27.    Both the Policies and 215 ILCS 5/462b required Wesco to refund excess premium if use of an incorrect classification, payroll or other rating factor resulted in payment by CTF

4



Illinois of premiums in excess of what should have been paid utilizing the correct classifications, payroll or other factor.

### The Schedule Rating Factor

28.     Schedule Rating is a method of adjusting the normal premium applied to a workers' compensation risk (*e.g.* classification rate x payroll) in order to account for readily identifiable, objective factors having a bearing on the probability or severity of future losses and other risk factors not accounted for by other rating adjustments.

29.     While insurers have another method to adjust the premium based on an insured's loss history - the use of the experience rating modification factor – Schedule Rating debits or credits are applied by an underwriter at the time the premium is quoted, without regard to of any prior loss experience and based on evidence in the insurer's files at the time concerning specific "risk characteristics."

30.     Illinois law required insurance carriers to file a Schedule Rating Plan, which is intended to ensure that underwriters base a schedule rating factor on the appropriate risk characteristics.

31.     Wesco may apply a Schedule Rating debit or credit when calculating the estimated premium, but it must do so in accordance with the Schedule Rating Plan that Wesco has on file with the State of Illinois.

32.     The Schedule Rating Plan that Wesco had on file with the State of Illinois states in part:

> The premium for a risk may be modified according to the Schedule Rating table to reflect such characteristics of the risk as are not reflected in its experience.



33.     Wesco's Schedule Rating Plan requires the underwriter to base the schedule rating factor on documentary evidence in the underwriting file at the time the schedule credit or debit is applied.

34.     In addition, the underwriter must create a derivation of the schedule factor which must be made available to the insured upon request.

35.     A copy of Wesco's Schedule Rating table of the Risk Characteristics on file with the Illinois Commissioner of Insurance is attached at Exhibit C.

<div align="center">

**Synergy's Use Of Schedule Rating Debits**

</div>

36.     With respect to the 2009 Policy, Synergy underwriter Kilian applied a Schedule Rating debit of 26.89% at the inception of the 2009 Policy, which increased the estimated premium by $75,037.

37.     With respect to the 2010 Renewal, Synergy underwriter Wolf applied a Schedule Rating debit of 21.89% at the inception of the 2010 Renewal, which increased the estimated premium by $56,209.

38.     With respect to the 2011 Renewal, Synergy underwriter Wolf applied a Schedule Rating debit of 6.5%.

39.     A copy of the Synergy derivation for the Schedule Rating debit on the 2011 Renewal is attached as Exhibit D.

<div align="center">

**Wesco's Schedule Rating Debits Were Not Based
Upon CTF Illinois' Risk Characteristics**

</div>

40.     Wesco's schedule rating plan requires a schedule rating factor to be based upon documentation of specific risk characteristics of CTF Illinois operations.

41.     The objective risk characteristics of CTF Illinois' operations did not change from 2009 to 2012, with the exception of adding a post-accident drug testing program.



42.     Synergy's schedule rating worksheets show a dramatic change with schedule rating

factor (from 22% to 6%) without any reason or basis.

### Wesco Based The Schedule Debits On CTF Illinois' Loss Experience

43.     Wesco's Schedule Rating Plan prohibits Wesco from basing schedule rating factors

on CTF Illinois' loss experience.

44.     On April 22, 2014, CTF Illinois asked Wesco to explain the basis for the schedule

rating factors for the 2009 Policy and the 2010 Renewal.

45.     Wesco's May 22, 2014 letter to CTF Illinois states:

> In reviewing the underwriting file, we have found that information
> provided in the application for workers compensation insurance
> along with account loss runs and a loss control survey conducted on
> 4/1/09 were utilized in determining the schedule debits that were
> applied. (Emphasis added)

### Wesco Changed Its Derivations After The Fact

46.     Wesco's Schedule Rating Plan requires Wesco to provide its derivations to its

insureds upon request.

47.     On March 25, 2014, CTF Illinois asked Wesco to provide the derivations for the

2009 Policy and the 2010 Renewal.

48.     On March 31, 2014, Wesco provided CTF Illinois with derivations for the 2009

Policy and the 2010 Renewal.

49.     A true and accurate copy of the derivations produced by Wesco to CTF Illinois on

March 31, 2014 are attached as Exhibit E.

50.     The Wesco derivations have a column titled "Reason/Basis" wherein the

underwriter is supposed to explain the reason for the credit or debit and identify the supporting

documentation.

7

51.     The "Reason/Basis" column of the derivations that Wesco provided CTF Illinois were blank.

52.     On September 16, 2014, CTF Illinois complained to the Illinois Department of Insurance (the "DOI") that Wesco's derivations were improper and needed to be removed from the final audit premium calculation.

53.     A true and correct copy of CTF Illinois' complaint to the DOI is attached as Exhibit F.

54.     Wesco responded to CTF Illinois' DOI Complaint on October 7, 2014, a copy of which was provided to CTF Illinois on October 8, 2014.

55.     A true and complete copy of the DOI's October 8, 2014 correspondence to CTF Illinois enclosing Wesco's October 7, 2014 response is attached as Exhibit G.

56.     The DOI provided CTF Illinois with a copy of Wesco's October 7, 2014 response, but not the attachments to the October 7, 2014 response. (Exhibit G)

57.     CTF Illinois, through its counsel, issued a FOIA request to the DOI in order to obtain the enclosures to Wesco's October 7, 2014 response.

58.     The DOI responded to the FOIA request on May 24, 2018 and provided CTF Illinois with a complete copy of the Wesco October 7, 2014 response, including the exhibits.

59.     A copy of Wesco's schedule rating derivatives DOI produced to CTF Illinois in response to its FOIA request are attached as Exhibit H.

60.     The schedule rating derivatives Wesco provided the Department of Insurance were different than the derivations Wesco provided CTF Illinois. (Compare Exhibits E and H)



61. Specifically, the "Reason/Basis" column of the derivations Wesco provided CTF Illinois were blank, but the "Reason/Basis" column for the derivations Wesco provided to the DOI contained content. (Compare Exhibits E and H)

## COUNT I
### Breach of Contract – The 2009 Policy

62. CTF Illinois repeats and re-alleges paragraphs 1 through 61, as though fully set forth herein.

63. The 2009 Policy is a contract.

64. The 2009 Policy requires the calculation of premium to be in accordance with governing rules, regulations, filed plans and manuals approved by the Illinois Commissioner of Insurance, including the Wesco Schedule Rating Plan.

65. Wesco's use of a Schedule Rating debit for the 2009 Policy did not comply with Wesco's Schedule Rating Plan and constituted a material breach of contract.

66. As a direct and proximate result of Wesco's breach of contract, and accounting for all applicable offsets, CTF Illinois has been damaged by paying excess, estimated premium for the 2009 Policy in the amount of $69,992, which should have been refunded to CTF Illinois upon Wesco's calculation of the final premium.

67. Wesco must eliminate the 26.89% Schedule Rating debit from its calculation of the final premium, which will result in a premium refund to CTF Illinois of $69,992.

68. CTF Illinois has complied with all conditions and has fully performed its obligations under the 2009 Policy and is entitled to damages plus pre-judgment interest, running from August 27, 2010.

WHEREFORE, plaintiff, CTF Illinois, respectfully demands the following relief:

  i. An award of damages in the amount of $69,992;

9



ii.     An award of costs, disbursements and pre-judgment and post-judgment interest as authorized by law; and

iii.    An award of such other relief as the Court deems just and equitable.

## COUNT II
### Breach of Contract – The 2010 Renewal

69.    CTF Illinois repeats and re-alleges paragraphs 1 through 68, as though fully set forth herein.

70.    The 2010 Renewal is a contract.

71.    The 2010 Renewal requires the calculation of premium to be in accordance with governing rules, regulations, filed plans and manuals approved by the Illinois Commissioner of Insurance, including Wesco's Schedule Rating Plan.

72.    Wesco's use of a Schedule Rating debit for the 2010 Renewal did not comply with Wesco's Schedule Rating Plan and constituted a material breach of contract.

73.    As a direct and proximate result of Wesco's breach of contract, and accounting for all applicable offsets, CTF Illinois has been damaged by paying excess, estimated premium for the 2010 Renewal in the amount of $52,952, which should have been refunded to CTF Illinois upon Wesco's calculation of the final premium.

74.    Wesco must eliminate the 21.89% Schedule Rating debit from the calculation of the final premium, which will result in a premium refund of $52,952.

75.    CTF Illinois has complied with all conditions and has fully performed its obligations under the 2010 Renewal and is entitled to prejudgment interest, running from September 12, 2011.

WHEREFORE, plaintiff, CTF Illinois, respectfully demands the following relief:

i.     An award of damages in the amount of $52,952;

1



    ii.    An award of costs, disbursements and pre-judgment and post-judgment interest as authorized by law; and

    iii.    An award of such other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff, CTF Illinois hereby demands a trial by jury for all issues so triable.

Dated: July 20, 2018          Respectfully submitted,

                   CTF ILLINOIS

                   By:  _s/ Charles L. Philbrick_____
                        One of its attorneys

Charles L. Philbrick, ARDC No. 6198405
RATHJE WOODWARD LLC
300 East Roosevelt Road, Suite 300
Wheaton, Illinois 60187
Telephone: (630) 668-8500
Facsimile: (630) 510-4931
Email: cphilbrick@rathjewoodward.com

1



# Wesco Insurance Company

A Stock Insurance Company
874 Walker Rd, Suite C
Dover, DE 19904

WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE POLICY

WC 00 00 01 A
1 of 3
INFORMATION PAGE

1. Insured:

**Charleston Transitional Facility**
1902 Fox Drive
Champaign IL 61820

Other workplaces not shown above:
None

Producer:
Synergy Coverage Solutions, LLC
3440 Toringdon Way, Suite 300
Charlotte NC 28277

| | |
|---|---|
| **Policy Number:** | **WWC3005100** |
| Federal Tax ID: | 364386948 |
| Board File Number: | |
| Renewal of: | New |
| Entity: | Corporation |
| Interim Adjustment: | Annual |
| Ncci Code: | 26135 |
| SIC Code: | 8322 |

2. The policy period is from    7/1/2009 to 7/1/2010    12:01 a.m. at the insured's mailing address.

3. A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of
the states listed here:   Illinois

B. Employers Liability Insurance: Part Two of the policy applies to work in each stated listed in item 3.A.
The limits of our liability under Part Two are:

| State | Bodily Injury by Accident | Bodily Injury by Disease | Bodily Injury by Disease |
|---|---|---|---|
| IL | $ 500,000 each accident | $ 500,000 policy limit | $ 500,000 each employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
All states except ND, OH, WA, WV, WY and State(s) Designated in item 3A.

D. This policy includes these endorsements and schedules:
WC 00 00 00 A, WC 00 00 01 A, WC 00 04 06, WC 00 04 14, WC 00 04 19, WC 00 04 21C, WC 00 04 22A,
WC 12 03 06, WC 12 06 01C

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating
Plans. All information required below is subject to verification and change by audit.
See Extension of Information Page

| | |
|---|---|
| TOTAL ESTIMATED ANNUAL PREMIUM | 319,557 |
| STATE ASSESSMENT | 3,228 |
| TOTAL ESTIMATED COST | 322,785 |
| Minimum Premium | 500 |
| Deposit Premium | 83,115 |

Issue Date: 6/29/2009     Countersigned by: _Arlene Brown Diggers_

Authorized Representative

_8/6/09_
_Same as proposal!_

_8/6/09 - Rcu delivered_



**Wesco Insurance Company**

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

WC 00 00 01 A
2 of 3
INFORMATION PAGE

**Insured:  Charleston Transitional Facility**          **Policy Number:  WWC3005100**

### EXTENSION OF INFORMATION PAGE FOR ITEM #4
### ITEM 4: SCHEDULE OF PREMIUMS

| Classifications | # of Emps | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remun. | Estimated Annual Premium |
|---|---|---|---|---|---|
| **State of Illinois** | | | | | |
| Clerical Office Employees NOC | | 8810 | 1,657,679 | 0.35 | 5,802 |
| Social Services Organization - All Employees, Drivers | | 8864 | 5,766,824 | 2.53 | 146,901 |
| Janitorial Services By Contractors - No Window Cleaning Above Ground Level & Drivers | | 9014 | 63,572 | 5.22 | 3,318 |
| Manual Premium | | | | | 155,021 |
| Total Manual Premium | | | | | 155,021 |
| Premium for Increased Limits Part Two   1.7% (500/500/500) | | 9807 | | | 2,635 |
| Total Premium Subject to Experience Modification | | | | | 157,656 |
| Experience Modified (177.0%) | | | | | 279,051 |
| Schedule Modifier 26.89% | | 9889 | | | 75,037 |
| Premium Discount 11.1% | | 0063 | | | -39,304 |
| Expense Constant | | 0900 | | | 280 |
| Terrorism | | 9740 | | | 3,744 |
| Catastrophe (other than Terrorism) | | 9741 | | | 749 |
| Total IL Premium | | | | | 319,557 |
| Illinois Surcharge 1.01% | | 9999 | | | 3,228 |
| Total IL Cost | | | | | 322,785 |

| | |
|---|---|
| **TOTAL ESTIMATED ANNUAL PREMIUM** | **319,557** |
| **STATE ASSESSMENT** | **3,228** |
| **TOTAL COST** | **322,785** |

**Exhibit A - 2**

**Wesco Insurance Company**

WC 00 00 01 A
3 of 3

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

INFORMATION PAGE

Insured:  **Charleston Transitional Facility**          Policy Number:  **WWC3005100**

### PAYMENT SCHEDULE

| Description | Premium Due | Surcharge Due | Fees Due | Total Due |
|---|---|---|---|---|
| Downpayment | $79,887.00 | $3,228.00 | $0.00 | $83,115.00 |
| Installment 1 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 2 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 3 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 4 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 5 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 6 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 7 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 8 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Installment 9 of 9 | $26,630.00 | $0.00 | $0.00 | $26,630.00 |
| Totals | $319,557.00 | $3,228.00 | $0.00 | $322,785.00 |

Agency Bill:  You will receive invoices from Synergy Coverage Solutions, LLC.

Above is an estimated payment schedule.  You will receive actual premium invoices from Synergy Coverage Solutions, LLC which may include fees not shown above.

If you have questions regarding your premium invoice, please contact Synergy Coverage Solutions, LLC at 704-927-2860.

For other questions regarding your policy, please contact Synergy Coverage Solutions, LLC at 704-927-2860.

Printed:  6/29/2009

**Exhibit A - 3**

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE

### WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit A - 4

3.  litigation costs taxed against you;
4.  interest on a judgment as required by law until we offer the amount due under this insurance; and
5.  expenses we incur.

### E. Other insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.  of your serious and willful misconduct;
2.  you knowingly employ an employee in violation of law;
3.  you fail to comply with a health or safety law or regulation; or
4.  you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have our rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1.  As between an injured worker and us, we have notice of the injury when you have notice.
2.  Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3.  We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.  This insurance conforms to the parts of the workers compensation law that apply to:
    a.  benefits payable by this insurance;
    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.
6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO

## EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

### C. Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901–950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171–8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331–1356), the Defense Base Act (42 USC Sections 1651–1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901–942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51–60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. bodily injury to a master or member of the crew of any vessel;

11. fines or penalties imposed for violation of federal or state law; and

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801–1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit A - 6

D. **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against your for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

F. **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G. **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee. Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H. **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I. **Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE

## OTHER STATES INSURANCE

A. **How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.
4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**
Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR

## YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.
1. Provide for immediate medical and other services required by the workers compensation law.
2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.
3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.
4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.
5. Do nothing after an injury occurs that would interfere with our right to recover from others.
6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE—PREMIUM

**A. Our Manuals**
All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**
Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. all your officers and employees engaged in work covered by this policy; and
2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

**D. Premium Payments**
You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**
The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit A - 8

classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy. If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F.   Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G.   Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX—CONDITIONS

### A.   Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B.   Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C.   Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent. If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D.   Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

### E.   Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit A - 9



| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 06 |
|---|---|
| | |

### PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

1. **State**                           **Estimated Eligible Premium**

| First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|

2. Average percentage discount:     11.1 %

3. Other policies:

4.  If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective | 7/1/2009 | Policy No. | WWC3005100 | Endorsement No.  WC 00 04 09 |
|---|---|---|---|---|
| Insured | Charleston Transitional Facility | | | Premium $ |
| Insurance Company | Wesco Insurance Company | Countersigned by | | |

© 1995 National Council on Compensation Insurance, Inc.

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 14 |
|---|---|

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective | 7/1/2009 | Policy No. | WWC3005100 | Endorsement No. WC 00 04 14 |
|---|---|---|---|---|
| Insured | Charleston Transitional Facility | | | Premium $ |
| Insurance Company | Wesco Insurance Company | | Countersigned by | |

© 1990 National Council on Compensation Insurance, Inc.

**Exhibit A - 11**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 19 |
|---|---|
| | (Ed. 1-01) |

### PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

**D. Premium** is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective | 7/1/2009 | Policy No. | WWC3005100 | Endorsement No. WC 00 04 19 |
|---|---|---|---|---|
| Insured | Charleston Transitional Facility | | | Premium $ |
| Insurance Company | Wesco Insurance Company | Countersigned by | | |

© 2000 National Council on Compensation Insurance.

**Exhibit A - 12**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 21C |
|---|---|
| | (Ed. 9-08) |

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- ☐Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- ☐Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- ☐Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

  a. It is an act that is violent or dangerous to human life, property, or infrastructure;
  b. The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

  c. It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- ☐Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|---|---|---|
| IL | 0.01 | $749.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | Endorsement No.   WC 00 04 21C |
|---|---|---|---|
| Endorsement Effective | 7/1/2009 | Policy No.   WWC3005100 | Premium $ |
| Insured | Charleston Transitional Facility | | |
| Insurance Company | Wesco Insurance Company | Countersigned by _____ | |

© 2008 National Council on Compensation Insurance, Inc.

**Exhibit A - 13**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 22 A |
|---|---|

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. ☐The act is an act of terrorism.
b. The act is violent or dangerous to human life, property or infrastructure.
c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

### Limitation of Liability

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

### Policyholder Disclosure Notice

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.
2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.
3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|---|---|---|
| IL | 0.05 | $3,744.00 |

© 2008 National Council on Compensation Insurance, Inc.

**Exhibit A - 14**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 03 06 |
|---|---|
| | |

### ILLINOIS WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY EXCLUSION ENDORSEMENT

C. Change Part Two—C. Exclusions 1. as follows:

This insurance does not cover

1. liability assumed under a contract, including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act and the Workers Occupational Disease Act. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | |
|---|---|---|---|
| Endorsement Effective | 7/1/2009 | Policy No. WWC3005100 | Endorsement No.  WC 12 03 06 |
| Insured | Charleston Transitional Facility | | Premium $ |
| Insurance Company | Wesco Insurance Company | Countersigned by _____ | |

© Copyright 2008 National Council on Compensation Insurance, Inc. All Rights Reserved.

**Exhibit A - 15**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 06 01C |
|---|---|
| | (Ed. 4-01) |

### ILLINOIS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Illinois is shown in Item 3.A. of the Information Page.

Part Six (Conditions), Condition A. Inspection, Condition D. Cancellation and Condition E. Sole Representative of the policy are replaced by these four Conditions.

#### Inspection

We have the right, but are not obliged, to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. The National Council on Compensation Insurance has the same rights we have under this provision.

#### Cancellation

1. You may cancel this policy. You will mail or deliver advance written notice to us, stating when the cancellation is to take effect.
2. We may cancel this policy. We will mail to each named insured and to the broker or the agent of record advance written notice stating when the cancellation is to take effect.
3. If we cancel because you do not pay all premium when due, we will mail the notice of cancellation at least ten days before the cancellation is to take effect. If we cancel for any other reason, we will mail the notice:
   a. at least 30 days before the cancellation is to take effect if the policy has been in force for 60 days or less;
   b. at least 60 days before the cancellation is to take effect if the policy has been in force for more than 60 days.
4. If this policy has been in effect for 60 days or more, we may cancel only for one of the following reasons:
   a. Nonpayment of premium.
   b. The policy was issued because of a material misrepresentation.
   c. You violated any of the material terms and conditions of the policy.
   d. There are unfavorable underwriting factors, specific to you, that were not present when the policy took effect.
   e. The Director has determined that we no longer have adequate reinsurance to meet our needs.
   f. The Director has determined that continuation of coverage could place us in violation of the laws of Illinois.
5. Our notice of cancellation will state our reasons for canceling.
6. The policy period will end on the day and hour stated in the cancellation notice.

#### Nonrenewal

1. We may elect not to renew the policy. If we fail to give 60 days notice, the policy will automatically be extended for one year. Mailing that notice to you at your last known mailing address will be sufficient to prove notice. An exact and unaltered copy of such notice shall also be sent to the insured's broker, if known, or the agent of record at the last mailing address known by the company.
2. Our notice of nonrenewal will state our reasons for not renewing.

**Exhibit A - 16**

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 06 01C |
|---|---|
| | (Ed. 4-01) |

3.  If we fail to provide the notice of nonrenewal as required, the policy will still terminate on its expiration date if:

    a.  We show you a willingness to renew the policy; or

    b.  You notify us or the agent or broker who procured this policy that you do not want the policy renewed; or

    c.  You fail to pay all premiums when due; or

    d.  You obtain other insurance as a replacement of the policy.

**Sole Representative**
The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium or to give us notice of cancellation.

Part Five (Premium), Section G. Audit is replaced by this Section.

**Audit**
You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy ends. Information developed by audit will be used to determine final premium. The National Council on Compensation Insurance has the same rights we have under this provision.

© 2001 National Council on Compensation Insurance.

WC 12 06 01C

(Ed. 4-01)

**Exhibit A - 17**

# NOTICE TO EMPLOYEES
# FROM THE STATE OF ILLINOIS:

**WORKERS' COMPENSATION** is a system of benefits provided by law to most workers who have job-related injuries or illnesses. Benefits are paid for injuries that are caused, in whole or in part, by an employee's work. This may include the aggravation of a pre-existing condition, injuries brought on by the repetitive use of a part of the body, heart attacks, or any other physical problem caused by work. Benefits are paid regardless of fault.

**IF YOU SUFFER FROM A WORK-RELATED INJURY OR ILLNESS, YOU SHOULD TAKE THE FOLLOWING STEPS:**

1. **GET MEDICAL ASSISTANCE.**   By law, your employer must pay for all necessary medical services required to cure or relieve the effects of the injury or illness. The employee may choose two physicians, surgeons, or hospitals. Where necessary, the employer must also pay for physical, mental, or vocational rehabilitation, within prescribed limits.

2. **NOTIFY YOUR EMPLOYER.**   You must notify your employer of the accidental injury or illness within 45 days, either orally or in writing. To avoid possible delays, it is recommended the notice also include your name, address, telephone number, Social Security number, and a brief description of the injury or illness.

3. **LEARN YOUR RIGHTS.**   Your employer is required by law to report accidents that result in more than three lost work days to the Industrial Commission. Once the accident is reported, you should receive a handbook that explains the law, benefits, and procedures. If you need a handbook, please call the Industrial Commission.

    If you must lose time from work to recover from the injury or illness, you may be entitled to receive weekly payments and necessary medical care until you are able to return to work that is reasonably available to you.

    It is against the law for an employer to harass, discharge, refuse to rehire or in any way discriminate against an employee for exercising his or her rights under the Workers' Compensation or Occupational Diseases Acts. If you file a fraudulent claim, you may be penalized under the law.

4. **KEEP WITHIN THE TIME LIMITS.**   Generally, claims must be filed within three years of the injury or disablement from an occupational disease, or within two years of the last workers' compensation payment, whichever is later. Claims for pneumoconiosis, radiological exposure, asbestosis, or similar diseases have special requirements.

    Injured workers have the right to reopen their case within 30 months after an award is made if the disability increases, but cases that are resolved by a lump-sum settlement contract approved by the Commission cannot be reopened. Only settlements approved by the Commission are binding.

For more information, write or call the Commission at 100 W. Randolph St., #8-200, Chicago, IL 60601 312/814-6611; in Peoria, 309/671-3019; in Rockford, 815/987-7292; or in Springfield, 217/785-7084.

---

Employers must display this notice in a prominent place for all employees and complete the information below regarding the insurance company. Self-insured employers should list the person or firm responsible for handling the employer's workers' compensation claims.

| | | | |
|---|---|---|---|
| Name | Wesco Insurance Company | | |
| Business address | 5800 Lombardo Center Cleveland OH 44131-2550 | | |
| Business phone | 877-528-7878 | | |
| Effective date | 7/1/2009 | Termination date | 7/1/2010 |
| Policy number | WWC3005100 | Employer's FEIN | 364386948 |

Form ICPN 10/98. Printed by the authority of the State of Illinois.
This form is a true and exact copy of the current Industrial Commission form, ICPN, as revised 10/98.

WC 8145a (10-98) UNIFORM INFORMATION SERVICES, INC.

**Exhibit A - 18**

# Wesco Insurance Company

## IMPORTANT NOTICE
## SMALL DEDUCTIBLE ELECTION FORM

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| WWC3005100 | FROM: 7/1/2009   TO: 7/1/2010 |

INSURED

Charleston Transitional Facility

Illinois law permits an employer to purchase workers' compensation insurance with a deductible. The deductible is applicable to medical benefits only. The deductible applies separately to each accident, regardless of the number of persons injured in the accident.

DEDUCTIBLE AMOUNT EACH ACCIDENT

☐ $1,000

You are not required to have a deductible. It is to be understood that we will pay the deductible amount for you and that you must reimburse us for any deductible amounts paid. Non-reimbursement of the deductible(s) will result in cancellation of your policy.

Please check the option you have elected and return this form to us as soon as possible.

☐ No, I do not want the deductible described in this Notice.

☐ Yes, I want the $1,000 deductible to apply to medical benefits under the Illinois Workers' Compensation Law. I understand that the Company shall pay the deductible amount and be reimbursed by the employer shown above.

If you fail to respond promptly to the Company, it will be construed to mean you have not elected the small deductible option.

If you have any questions, please contact your agent or broker.

| INSURED'S SIGNATURE AND TITLE | DATE |
|---|---|

Policyholder Notice        IL-SDEF 01 (11/03)

Exhibit A - 19

# ILLINOIS INDUSTRIAL COMMISSION
# OPERATIONS FUND SURCHARGE
# POLICYHOLDER DISCLOSURE

Your policy has been surcharged as a result of the Illinois Industrial Commission Operations Fund Surcharge effective July 1, 2004. The establishment of this Fund provides that every insurance company, authorized or licensed by the Illinois Insurance Department and insuring employer's liabilities arising under the Workers' Compensation Act or the Workers' Occupational Disease Act, must remit a surcharge equal to 1.01% of the direct written premium for insuring employers' liability under the Worker's Compensation Act or Workers' Occupational Diseases Act.

The portion of your annual premium that is attributable to this surcharge is shown on your declaration page.

34-1910 07 04

Page 1 of 1

Exhibit A - 20

# NOTICE OF RIGHTS TO FILE A COMPLAINT

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

**Wesco Insurance Company**
**5800 Lombardo Center**
**Cleveland OH 44131-2550**
**877-528-7878**

You can also contact the Illinois Division of Insurance, a state agency, which enforces Illinois' insurance laws, and file a complaint. You can contact the Illinois Division of Insurance by contacting:

**Illinois Division of Insurance**
**Consumer Division**
**320 W. Washington Street**
**Springfield, Illinois 62767**
**866-445-5364**

Page 1 of 1

25-0002 06 08

Exhibit A - 21

# WESCO INSURANCE COMPANY

*874 Walker Rd, Suite C*
*Dover, DE  19904*

### WORKERS' COMPENSATION

*and*

### EMPLOYERS' LIABILITY INSURANCE POLICY

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Stephen Ungar, Secretary

Barry Dov Zyskind, President

To obtain information, please contact your agent or Wesco Insurance Company at **877-528-7878.**  You may also write Wesco Insurance Company Consumer Relations at:

5800 Lombardo Center
Cleveland OH 44131-2550

WC 00 00 00

Exhibit B - 1



# ILLINOIS INDUSTRIAL COMMISSION
# OPERATIONS FUND SURCHARGE
# POLICYHOLDER DISCLOSURE

Your policy has been surcharged as a result of the Illinois Industrial Commission Operations Fund Surcharge effective July 1, 2004. The establishment of this Fund provides that every insurance company, authorized or licensed by the Illinois Insurance Department and insuring employer's liabilities arising under the Workers' Compensation Act or the Workers' Occupational Disease Act, must remit a surcharge equal to 1.01% of the direct written premium for insuring employers' liability under the Worker's Compensation Act or Workers' Occupational Diseases Act.

The portion of your annual premium that is attributable to this surcharge is shown on your declaration page.

34-1910 07 04

Page 1 of 1

Exhibit B - 2

# NOTICE OF RIGHTS TO FILE A COMPLAINT

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

> **Wesco Insurance Company**
> **5800 Lombardo Center**
> **Cleveland OH 44131-2550**
> **877-528-7878**

You can also contact the Illinois Division of Insurance, a state agency, which enforces Illinois' insurance laws, and file a complaint. You can contact the Illinois Division of Insurance by contacting:

> **Illinois Division of Insurance**
> **Consumer Division**
> **320 W. Washington Street**
> **Springfield, Illinois 62767**
> **866-445-5364**

25-0002 06 08

Page 1 of 1

Exhibit B - 3

# Wesco Insurance Company

### A Stock Insurance Company
874 Walker Rd, Suite C
Dover, DE 19904

WORKERS COMPENSATION
AND EMPLOYERS LIABILITY
INSURANCE POLICY

WC 00 00 01 A
1 of 3
INFORMATION PAGE

1. Insured:

**Charleston Transitional Facility**
1902 Fox Drive
Champaign IL 61820

Other workplaces not shown above:

None

Producer:

Synergy Coverage Solutions, LLC
3440 Toringdon Way, Suite 300
Charlotte NC 28277

| | |
|---|---|
| **Policy Number:** | **WWC3013873** |
| Federal Tax ID: | 364386948 |
| Board File Number: | |
| Renewal of: | WWC3005100 |
| Entity: | Corporation |
| Interim Adjustment: | Annual |
| Ncci Code: | 26135 |
| SIC Code: | 8322 |

2. The policy period is from       7/1/2010  to  7/1/2011      12:01 a.m. at the insured's mailing address.

3. A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of
   the states listed here:   Illinois

   B. Employers Liability Insurance: Part Two of the policy applies to work in each stated listed in item 3.A.
   The limits of our liability under Part Two are:

   | State | Bodily Injury by Accident | Bodily Injury by Disease | Bodily Injury by Disease |
   |---|---|---|---|
   | IL | $    500,000 each accident | $    500,000 policy limit | $    500,000 each employee |

   C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
   All states except ND, OH, WA, WY and State(s) Designated in Item 3A.

   D. This policy includes these endorsements and schedules:
   WC 00 00 00 A, WC 00 00 01 A, WC 00 04 06, WC 00 04 14, WC 00 04 19, WC 00 04 21C, WC 00 04 22A,
   WC 12 03 06, WC 12 06 01C

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating
   Plans. All information required below is subject to verification and change by audit.
   See Extension of Information Page

   | | |
   |---|---|
   | **TOTAL ESTIMATED ANNUAL PREMIUM** | 283,344 |
   | **STATE ASSESSMENT** | 2,862 |
   | **TOTAL ESTIMATED COST** | 286,206  – ∘ ⌒ |
   | Minimum Premium | 500 |
   | Deposit Premium | 73,698 |

   Issue Date:  6/24/2010         Countersigned by: _____

   Authorized Representative

**Wesco Insurance Company**

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

WC 00 00 01 A
2 of 3
INFORMATION PAGE

Insured: Charleston Transitional Facility

Policy Number: WWC3013873

## EXTENSION OF INFORMATION PAGE FOR ITEM #4
### ITEM 4: SCHEDULE OF PREMIUMS

| Classifications | # of Emps | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remun. | Estimated Annual Premium |
|---|---|---|---|---|---|
| **State of Illinois** | | | | | |
| Clerical Office Employees NOC | | 8810 | 1,620,000 | 0.31 | 5,022 |
| Social Services Organization - All Employees, Drivers | | 8864 | 5,846,000 | 2.66 | 155,504 |
| Janitorial Services By Contractors - No Window Cleaning Above Ground Level & Drivers | | 9014 | 43,000 | 5.51 | 2,369 |
| Manual Premium | | | *7,509,000 | | 162,895 |
| Total Manual Premium | | | | | 162,895 |
| Premium for Increased Limits Part Two 1.7% (500/500/500) | | 9807 | | | 2,769 |
| Total Premium Subject to Experience Modification | | | | | 165,664 |
| Experience Modified 155.0% | | | | | 256,779 |
| Schedule Modifier 21.89% | | 9889 | | | 56,209 |
| Premium Discount 11% | | 0063 | | | -34,429 |
| Expense Constant | | 0900 | | | 280 |
| Terrorism | | 9740 | | | 3,754 |
| Catastrophe (other than Terrorism) | | 9741 | | | 751 |
| Total IL Premium | | | | | 283,344 |
| Illinois Surcharge 1.01% | | 9999 | | | 2,862 |
| Total IL Cost | | | | | 286,206 |

| | |
|---|---|
| **TOTAL ESTIMATED ANNUAL PREMIUM** | 283,344 |
| **STATE ASSESSMENT** | 2,862 |
| **TOTAL COST** | 286,206 |

Exhibit B – 5

**Wesco Insurance Company**

WC 00 00 01 A
3 of 3

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

INFORMATION PAGE

Insured:  **Charleston Transitional Facility**

Policy Number:  **WWC3013873**

### PAYMENT SCHEDULE

| Description | Premium Due | Surcharge Due | Fees Due | Total Due |
|---|---|---|---|---|
| Downpayment | $70,836.00 | $2,862.00 | $0.00 | $73,698.00 |
| Installment 1 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 2 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 3 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 4 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 5 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 6 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 7 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 8 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Installment 9 of 9 | $23,612.00 | $0.00 | $0.00 | $23,612.00 |
| Totals | $283,344.00 | $2,862.00 | $0.00 | $286,206.00 |

Agency Bill:  You will receive invoices from Synergy Coverage Solutions, LLC.

Above is an estimated payment schedule.  You will receive actual premium invoices from Synergy Coverage Solutions, LLC which may include fees not shown above.

If you have questions regarding your premium invoice, please contact Synergy Coverage Solutions, LLC at 704-927-2860.

For other questions regarding your policy, please contact Synergy Coverage Solutions, LLC at 704-927-2860.

Printed:   6/24/2010

**Exhibit B - 6**

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

**A. The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**

State means any state of the United States of America, and the District of Columbia.

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE

### WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.
2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;
2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

3.  litigation costs taxed against you;
4.  interest on a judgment as required by law until we offer the amount due under this insurance; and
5.  expenses we incur.

E.  **Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F.  **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.  of your serious and willful misconduct;
2.  you knowingly employ an employee in violation of law;
3.  you fail to comply with a health or safety law or regulation; or
4.  you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G.  **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H.  **Statutory Provisions**

These statements apply where they are required by law.

1.  As between an injured worker and us, we have notice of the injury when you have notice.
2.  Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3.  We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.
5.  This insurance conforms to the parts of the workers compensation law that apply to:
    a.  benefits payable by this insurance;
    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.
6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO

## EMPLOYERS LIABILITY INSURANCE

A.  **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit B - 8

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C. Exclusions**

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

6. bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901–950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171–8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331–1356), the Defense Base Act (42 USC Sections 1651–1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901–942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51–60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. bodily injury to a master or member of the crew of any vessel;

11. fines or penalties imposed for violation of federal or state law; and

12. damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801–1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

**D.  We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

**E.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1.   reasonable expenses incurred at our request, but not loss of earnings;
2.   premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;
3.   litigation costs taxed against you;
4.   interest on a judgment as required by law until we offer the amount due under this insurance; and
5.   expenses we incur.

**F.  Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

**G.  Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1.   Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.
2.   Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee. Bodily injury by disease does not include disease that results directly from a bodily injury by accident.
3.   We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H.  Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I.  Actions Against Us**

There will be no right of action against us under this insurance unless:

1.   You have complied with all the terms of this policy; and
2.   The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE

## OTHER STATES INSURANCE

**A.  How This Insurance Applies**

1.   This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
2.   If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR

## YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE—PREMIUM

**A. Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy. If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX—CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent. If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.

Exhibit B - 12

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 06 |
|---|---|

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

1.  **State**   **Estimated Eligible Premium**

| First | Next | Next | Balance |
|---|---|---|---|
| $5,000 | $95,000 | $400,000 | |

2. Average percentage discount:   11.0 %

3. Other policies:

4. If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | |
|---|---|---|
| Endorsement Effective  7/1/2010 | Policy No.  WWC3013873 | Endorsement No.  WC 00 04 06 |
| Insured  Charleston Transitional Facility | | Premium $ |
| Insurance Company  Wesco Insurance Company | Countersigned by | |

© 1995 National Council on Compensation Insurance, Inc.

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 14 |
|---|---|
|  |  |

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective  7/1/2010            Policy No.  WWC3013873            Endorsement No.  WC 00 04 14
Insured            Charleston Transitional Facility                                Premium $

Insurance Company    Wesco Insurance Company            Countersigned by  _____

© 1990 National Council on Compensation Insurance, Inc.

Exhibit B - 14

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 19 |
|---|---|
| | (Ed. 1-01) |

## PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

D. **Premium** is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective  7/1/2010  Policy No.  WWC3013873    Endorsement No.  WC 00 04 19
Insured  Charleston Transitional Facility    Premium $

Insurance Company  Wesco Insurance Company    Countersigned by

© 2000 National Council on Compensation Insurance.

Exhibit B - 13

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 21C |
|---|---|
| | (Ed. 9-08) |

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 A), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.
- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.
- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:
  a. It is an act that is violent or dangerous to human life, property, or infrastructure;
  b. The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and
  c. It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

|  | Schedule |  |
|---|---|---|
| State | Rate | Premium |
| IL | 0.01 | $751.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective 7/1/2010 | Policy No: WWC3013873 | Endorsement No. WC 00 04 21C |
|---|---|---|
| Insured Charleston Transitional Facility | | Premium $ |
| Insurance Company Wesco Insurance Company | Countersigned by _____ | |

© 2008 National Council on Compensation Insurance, Inc.

Exhibit B - 16

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 00 04 22 A |
|---|---|

### TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a.  The act is an act of terrorism.
b.  The act is violent or dangerous to human life, property or infrastructure.
c.  The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
d.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

### Limitation of Liability

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

### Policyholder Disclosure Notice

1.  Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry insured Losses exceed $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2.  Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3.  The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|---|---|---|
| IL | 0.05 | $3,754.00 |

© 2008 National Council on Compensation Insurance, Inc.

Exhibit B - 17

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 03 06 |
|---|---|

### ILLINOIS WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY EXCLUSION ENDORSEMENT

C. Change Part Two—C. Exclusions 1. as follows:

This insurance does not cover

1. liability assumed under a contract, including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act and the Workers Occupational Disease Act. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective 7/1/2010          Policy No. WWC3013873                    Endorsement No. WC 12 03 06
Insured            Charleston Transitional Facility                                          Premium $

Insurance Company   Wesco Insurance Company          Countersigned by

© Copyright 2008 National Council on Compensation Insurance, Inc. All Rights Reserved.

Exhibit B - 18

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 06 01C |
| --- | --- |
| | (Ed. 4-01) |

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Illinois is shown in item 3.A. of the Information Page.

Part Six (Conditions), Condition A. Inspection, Condition D. Cancellation and Condition E. Sole Representative of the policy are replaced by these four Conditions.

### Inspection

We have the right, but are not obliged, to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. The National Council on Compensation Insurance has the same rights we have under this provision.

### Cancellation

1. You may cancel this policy. You will mail or deliver advance written notice to us, stating when the cancellation is to take effect.
2. We may cancel this policy. We will mail to each named insured and to the broker or the agent of record advance written notice stating when the cancellation is to take effect.
3. If we cancel because you do not pay all premium when due, we will mail the notice of cancellation at least ten days before the cancellation is to take effect. If we cancel for any other reason, we will mail the notice:
   a. at least 30 days before the cancellation is to take effect if the policy has been in force for 60 days or less;
   b. at least 60 days before the cancellation is to take effect if the policy has been in force for more than 60 days.
4. If this policy has been in effect for 60 days or more, we may cancel only for one of the following reasons:
   a. Nonpayment of premium.
   b. The policy was issued because of a material misrepresentation.
   c. You violated any of the material terms and conditions of the policy.
   d. There are unfavorable underwriting factors, specific to you, that were not present when the policy took effect.
   e. The Director has determined that we no longer have adequate reinsurance to meet our needs.
   f. The Director has determined that continuation of coverage could place us in violation of the laws of Illinois.
5. Our notice of cancellation will state our reasons for canceling.
6. The policy period will end on the day and hour stated in the cancellation notice.

### Nonrenewal

1. We may elect not to renew the policy. If we fail to give 60 days notice, the policy will automatically be extended for one year. Mailing that notice to you at your last known mailing address will be sufficient to prove notice. An exact and unaltered copy of such notice shall also be sent to the insured's broker, if known, or the agent of record at the last mailing address known by the company.
2. Our notice of nonrenewal will state our reasons for not renewing.

Exhibit B - 19

| WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY | WC 12 06 01C |
|---|---|
| | (Ed. 4-01) |

3.  If we fail to provide the notice of nonrenewal as required, the policy will still terminate on its expiration date if:

    a.  We show you a willingness to renew the policy; or

    b.  You notify us or the agent or broker who procured this policy that you do not want the policy renewed; or

    c.  You fail to pay all premiums when due; or

    d.  You obtain other insurance as a replacement of the policy.

**Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium or to give us notice of cancellation.

Part Five (Premium), Section G. Audit is replaced by this Section.

**Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy ends. Information developed by audit will be used to determine final premium. The National Council on Compensation Insurance has the same rights we have under this provision.

© 2001 National Council on Compensation Insurance.

**WC 12 06 01C**

(Ed. 4-01)

Exhibit B – 20

# WORKERS' COMPENSATION
## COMPANY EXCEPTION PAGE
## WESCO INSURANCE COMPANY

Rule 3-A-16-a POLICY WRITING MINIMUM PREMIUM

Minimum Premiums applicable to any policy shall be $500.

Rule 3-A-19   PREMIUM DISCOUNT
First $5,000          0.0%
Next $95,000          9.5
Next $400,000         11.9
Over $500,000         12.4

Policy Reinstatement Fee: $25 per policy reinstatement to directly billed policyholders.

Installment Fee:  $10 per premium installment to directly billed policyholders.  This fee does not apply to the first installment. Fee is waived when payment is made by Electronic Funds Transfer (EFT) from the insured's banking account.

Non-Sufficient Funds Fee: $25 to directly billed policyholders.

IL-WC EXCEPTION PAGE          Page 1 of 2                    Ed. 0606

**Exhibit C - 1**



Illinois

# WORKERS' COMPENSATION
# COMPANY EXCEPTION PAGE
# WESCO INSURANCE COMPANY

SCHEDULE RATING TABLE
RANGE MODIFICATION
(Credit to Debit)

The Schedule Rating factor is applied immediately after the experience modification in the premium algorithm. As such, NCCI's premium algorithm is adjusted to include the following line immediately after its "Experience Modification (Exp Mod)" line:

x Schedule Rating factor (1 − SR credit %) or (1 + SR debit %)

| Category | Available Range of Modification (Credit to Debit) |
|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 15% |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 15% |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 15% |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 15% |

Maximum 50% Credit; 75% Debit.  (Debit may not exceed assigned risk pool rates)

Exhibit C - 2



**LIVE. WORK. ADVOCATE.**
# CTF ILLINOIS

MAR 3 1 2014

CTF ILLINOIS
1902 Fox Drive, Suite B
Champaign, IL 61820

Phone: (217) 352-1557
Fax: (217) 352-7166
www.ctfillinois.org

February 27, 2014

Attn: Underwriting
Association Insurance Company
3440 Toringdon Way, Suite 300
Charlotte, NC  28277

To Whom It May Concern:

I am requesting the Schedule Rating derivations(s)/worksheets and supporting documentation for our workers' compensation policy term(s):  Policy WC522000085111, effective 7/1/2011–7/1/2012.

Association Insurance Company's Schedule Rating Plan for Illinois, paragraph 2-d, states: "At the time that the schedule rating factor is applied, the carrier must have documentation on file detailing the basis for the credit or debit.  This documentation must be provided to the insured on request."

Please email this information to my attention at denniscarpenter@ctfillinois.org.  If you have questions or are unable to complete this request by March 11, 2014, please contact me at 217-352-1557 with the date I can expect to receive the requested data.

Thank you in advance for your assistance with this request.

Sincerely,

Dennis D. Carpenter, CPA
President/CEO, Charleston Transitional Facility

**Mission Statement:** CTF ILLINOIS is a not-for-profit organization dedicated to empowering individuals with developmental and intellectual disabilities through services and programs that help them reach their potential in an environment that fosters respect, dignity, and success for each individual.

**Exhibit D-1**

## IL Workers' Compensation
## SCHEDULE RATING PLAN

| Risk Name | Policy Number |
|---|---|
| Charleston Transitional Facility | WC522-000085-111 |

| Risk City/State | Policy Effective Date |
|---|---|
| Champaign/IL | 7/1/2011 |

| Company | Yes/No |
|---|---|
| Association Insurance Company | yes |

| Risk Characteristics | Credit | Debit | Reason |
|---|---|---|---|
| **Classification Peculiarities** Exposure variation due to technology, employee distribution, or assignment by analogy Maximum Debit 10%, Maximum Credit 10% | | 6.5% | |
| **Employees** Selection, training, experience, controls, motivation and supervision **Maximum Debit 10%, Maximum Credit 10%** | | | |
| **Medical Controls** First Aid, medical assistance, emergency and disaster plans, managed care and return-to-work programs **Maximum Debit 5%, Maximum Credit 5%** | | | |
| **Premises/Work Environment** Physical condition, hazards controlled, housekeeping, documented inspection and preventive maintenance (including records of corrective action), industrial hygiene, ergonomics, workplace design, workflow, resource distribution, administrative controls **Maximum Debit 10%, Maximum Credit 10%** | | | |
| **Safety Devices and Equipment** Type and condition, guarding, personal protective equipment, inspection and maintenance, required training with documentation Maximum Debit 5% Maximum Credit 5% | | | |
| **Safety Organization** Accident investigation and analysis with corrective action, record keeping, safety committee organization and effectiveness, employee involvement Maximum Debit 5% Maximum Credit 5% | | | |
| | | | |
| **Total** (maximum of 40% credit/debit) | 0 | 6.5% | |

**Exhibit D-2**

Completed by:  Kathy Wolf          Date: ___7-1-11_____

**Exhibit D-3**



**CTF ILLINOIS**
1902 Fox Drive, Suite B
Champaign, IL 61820

**LIVE. WORK. ADVOCATE.**
**CTF ILLINOIS**

Phone: (217) 352-1557
Fax: (217) 352-7166
www.ctfillinois.org

March 25, 2014

Wesco Insurance Company
Attn: Underwriting
874 Walker Road, Suite C
Dover, DE 19904

Ms. Higgins:

I am requesting the Schedule Rating derivations/worksheets and supporting documentation for our workers' compensation policy terms:

- Policy WWC3005100, effective 7/1/2009 – 7/1/2010
- Policy WWC3005100, effective 7/1/2010 – 7/1/2011

Please provide the derivations in accordance with Wesco Insurance Company's Schedule Rating Plan for Illinois, Item 7, page 26, of the 5/16/2012 filing with the State of Illinois (Company Tracking #: ILAPDT12), which states; "The deviation [derivation] of the schedule factor must be made available to the insured upon request."

Please email this information to my attention at denniscarpenter@ctfillinois.org. If you have questions or are unable to complete this request by March 26th, 2014, please contact me at 217-352-1557.

Thank you in advance for your assistance with this request.

Sincerely,

Dennis D. Carpenter
President/CEO

DDC:rmr

**Mission Statement: CTF ILLINOIS** is a not-for-profit organization dedicated to empowering individuals with developmental and intellectual disabilities through services and programs that help them reach their potential in an environment that fosters respect, dignity, and success for each individual.

**Exhibit D-4**

## AMTRUST NORTH AMERICA
### ILLINOIS SCHEDULE RATING WORKSHEET

**ELIGIBILTY:**

| | |
|---|---|
| **Risk Name:** | Charleston Transitional Facility |
| **Risk Address:** | 1902 Fox Drive, Champaign, IL 61820 |
| **Policy Number:** | WWC 3005100 |
| **Policy Effective Date:** | 7/1/09 |
| **Effective/Expiration Date of Schedule Rating Applicability:** | 7/1/09-10 |
| **Carrier:** | Wesco Insurance Company |
| **Carrier Code:** | 25011 |
| **Risk Identification Number:** | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 15% | | 5 | |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 15% | | | |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 15% | | 10 | |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 15% | | 5 | |
| **Total** | | | 27 | Maximum=50%CR / 75% DB |

| $354,088 | $75,037 |
|---|---|
| Illinois Estimated Standard Premium | Total Schedule Rating Modification |
| **Derrick Killian** | 6-17-09 |
| Underwriter | Date Completed |

9/22/06

**Exhibit D-5**



# AMTRUST NORTH AMERICA
## ILLINOIS SCHEDULE RATING WORKSHEET

**ELIGIBILTY:**

| | |
|---|---|
| **Risk Name:** | Charleston Transitional Facility |
| **Risk Address:** | 1902 Fox Drive, Champaign, IL 61820 |
| **Policy Number:** | WWC TBD |
| **Policy Effective Date:** | 7/1/10 |
| **Effective/Expiration Date of Schedule Rating Applicability:** | 7/1/10-7/1/11 |
| **Carrier:** | Wesco Insurance Company |
| **Carrier Code:** | 25011 |
| **Risk Identification Number:** | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 10% | | | |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 10% | | | |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 10% | | 10 | |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 10% | | 5 | |
| **Total** | | | 22 | Maximum=50% |

$312,988 — Illinois Estimated Standard Premium

$56,209 — Total Schedule Rating Modification

Kathy Wolf — Underwriter

5-4-10 — Date Completed

**Exhibit D-6**

**LIVE. WORK. ADVOCATE.**
## CTF ILLINOIS

MAR 3 1 2014

**CTF ILLINOIS**
1902 Fox Drive, Suite B
Champaign, IL 61820

Phone: (217) 352-1557
Fax: (217) 352-7166
www.ctfillinois.org

February 27, 2014

Attn: Underwriting
Association Insurance Company
3440 Toringdon Way, Suite 300
Charlotte, NC 28277

To Whom It May Concern:

I am requesting the Schedule Rating derivations(s)/worksheets and supporting documentation for our workers' compensation policy term(s): Policy WC522000085111, effective 7/1/2011–7/1/2012.

Association Insurance Company's Schedule Rating Plan for Illinois, paragraph 2-d, states: "At the time that the schedule rating factor is applied, the carrier must have documentation on file detailing the basis for the credit or debit. This documentation must be provided to the insured on request."

Please email this information to my attention at denniscarpenter@ctfillinois.org. If you have questions or are unable to complete this request by March 11, 2014, please contact me at 217-352-1557 with the date I can expect to receive the requested data.

Thank you in advance for your assistance with this request.

Sincerely,

Dennis D. Carpenter, CPA
President/CEO, Charleston Transitional Facility

**Mission Statement: CTF ILLINOIS** is a not-for-profit organization dedicated to empowering individuals with developmental and intellectual disabilities through services and programs that help them reach their potential in an environment that fosters respect, dignity, and success for each individual.

Exhibit E - 1

## IL Workers' Compensation
## SCHEDULE RATING PLAN

| Risk Name | | | Policy Number | |
|---|---|---|---|---|
| Charleston Transitional Facility | | | WC522-000085-111 | |

| Risk City/State | | | Policy Effective Date | |
|---|---|---|---|---|
| Champaign/IL | | | 7/1/2011 | |

| Company | | Yes/No | | |
|---|---|---|---|---|
| Association Insurance Company | | yes | | |

| Risk Characteristics | Credit | Debit | Reason |
|---|---|---|---|
| **Classification Peculiarities** Exposure variation due to technology, employee distribution, or assignment by analogy **Maximum Debit 10%, Maximum Credit 10%** | | 6.5% | |
| **Employees** Selection, training, experience, controls, motivation and supervision                **Maximum Debit 10%, Maximum Credit 10%** | | | |
| **Medical Controls** First Aid, medical assistance, emergency and disaster plans, managed care and return-to-work programs **Maximum Debit 5%, Maximum Credit 5%** | | | |
| **Premises/Work Environment** Physical condition, hazards controlled, housekeeping, documented inspection and preventive maintenance (including records of corrective action), industrial hygiene, ergonomics, workplace design, workflow, resource distribution, administrative controls **Maximum Debit 10%, Maximum Credit 10%** | | | |
| **Safety Devices and Equipment** Type and condition, guarding, personal protective equipment, inspection and maintenance, required training with documentation Maximum Debit 5% Maximum Credit 5% | | | |
| **Safety Organization** Accident investigation and analysis with corrective action, record keeping, safety committee organization and effectiveness, employee involvement Maximum Debit 5% Maximum Credit 5% | | | |
| | | | |
| **Total** (maximum of 40% credit/debit) | 0 | 6.5% | |

**Exhibit E - 2**

Completed by:  Kathy Wolf                    Date: ____7-1-11_____



**CTF ILLINOIS**
1902 Fox Drive, Suite B
Champaign, IL 61820

**LIVE. WORK. ADVOCATE.**
**CTF ILLINOIS**

Phone: (217) 352-1557
Fax: (217) 352-7166
www.ctfillinois.org

March 25, 2014

Wesco Insurance Company
Attn: Underwriting
874 Walker Road, Suite C
Dover, DE  19904

Ms. Higgins:

I am requesting the Schedule Rating derivations/worksheets and supporting documentation for our workers' compensation policy terms:

- Policy WWC3005100, effective 7/1/2009 – 7/1/2010
- Policy WWC3005100, effective 7/1/2010 – 7/1/2011

Please provide the derivations in accordance with Wesco Insurance Company's Schedule Rating Plan for Illinois, Item 7, page 26, of the 5/16/2012 filing with the State of Illinois (Company Tracking #: ILAPDT12), which states; "The deviation [derivation] of the schedule factor must be made available to the insured upon request."

Please email this information to my attention at denniscarpenter@ctfillinois.org.  If you have questions or are unable to complete this request by March 26th, 2014, please contact me at 217-352-1557.

Thank you in advance for your assistance with this request.

Sincerely,

Dennis D. Carpenter
President/CEO

DDC:mr

Exhibit E - 4

# AMTRUST NORTH AMERICA
## ILLINOIS SCHEDULE RATING WORKSHEET

**ELIGIBILTY:**

| Risk Name: | Charleston Transitional Facility |
|---|---|
| Risk Address: | 1902 Fox Drive, Champaign, IL 61820 |
| Policy Number: | WWC 3005100 |
| Policy Effective Date: | 7/1/09 |
| Effective/Expiration Date of Schedule Rating Applicability: | 7/1/09-10 |
| Carrier: | Wesco Insurance Company |
| Carrier Code: | 25011 |
| Risk Identification Number: | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 15% | | 5 | |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 15% | | | |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 15% | | 10 | |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 15% | | 5 | |
| **Total** | | | 27 | Maximum=50%CR / 75% DB |

| $354,088 | $75,037 |
|---|---|
| Illinois Estimated Standard Premium | Total Schedule Rating Modification |
| **Derrick Killian** | **6-17-09** |
| Underwriter | Date Completed |

Exhibit E - 5

8/22/06

# AMTRUST NORTH AMERICA
## ILLINOIS SCHEDULE RATING WORKSHEET

**ELIGIBILTY:**

| Risk Name: | Charleston Transitional Facility |
|---|---|
| Risk Address: | 1902 Fox Drive, Champaign, IL 61820 |
| Policy Number: | WWC TBD |
| Policy Effective Date: | 7/1/10 |
| Effective/Expiration Date of Schedule Rating Applicability: | 7/1/10-7/1/11 |
| Carrier: | Wesco Insurance Company |
| Carrier Code: | 25011 |
| Risk Identification Number: | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 10% | | | |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 10% | | | |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 10% | | 10 | |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 10% | | 5 | |
| Total | | | 22 | Maximum=50% |

| $312,988 | $56,209 |
|---|---|
| Illinois Estimated Standard Premium | Total Schedule Rating Modification |
| **Kathy Wolf** | **5-4-10** |
| Underwriter | Date Completed |

Exhibit E - 6

9/22/06



CTF ILLINOIS
1902 Fox Drive, Suite B
Champaign, IL 61820

**LIVE. WORK. ADVOCATE.**

**CTF ILLINOIS**

Phone: (217) 352-1557
Fax: (217) 352-7166
www.ctfillinois.org

September 16, 2014

Illinois Department of Insurance
320 W. Washington Street
Springfield, IL 62767

To Whom It May Concern:

This complaint concerns the schedule rating charges for CTF ILLINOIS' 7/1/2009-10, 7/1/2010-11 and 7/1/2011-12 workers' compensation insurance policies. Wesco Insurance Company charged schedule debits for adverse conditions that did not exist. The erroneous charges resulted in my company's being overcharged by more than $150,000.00. There are three policies involved: the 7/1/2009-10 and the 7/1/2010-11 are with Wesco, while the 7/1/2011-12 policy is with Association Insurance Company (owned by Wesco). It should be noted that Kathy Wolf completed the derivation worksheets for the 7/1/2010-11 (Wesco) and the 7/1/2011-12 (Association Insurance Company) policies.

On April 22, 2014, I requested that Wesco Insurance Company/AmTrust Underwriters, Inc. provide support for the charges indicated on the schedule rating worksheets (attached). My purpose in asking for the support was to determine what led to the confusion that resulted in being charged a premium for non-existing conditions. My hope was that, given the reasons for the charges, we could resolve the issue with Wesco; however, AmTrust responded on behalf of Wesco Insurance Company on May 1, 2014. Amtrust did not provide support for the charges. Instead, AmTrust stated "...the scheduled debits were appropriately applied in accordance with our Scheduled Rating Plans." The charges could not have been applied in accordance with Wesco's Schedule Rating Plan if evidence supporting the charges doesn't exist. Or, if the charges did comply with the Schedule Rating Plan but the evidence was somehow false, the situation cannot be resolved directly with Wesco because they are refusing to supply the evidence that justifies the charges. This evidence could clear up the confusion and lead to resolving this issue.

**Exhibit F - 1**

Mission Statement: CTF ILLINOIS is a not-for-profit organization dedicated to empowering individuals with developmental and intellectual disabilities through services and programs that help them reach their potential in an environment that fosters respect, dignity, and success for each individual.

IDOI re Wesco/AmTrust
September 16, 2014

Wesco's Schedule Rating Plan has very specific requirements concerning evidence supporting schedule rating charges:

- Item 2 of the General Rules in Wesco's Schedule Rating Plan states: "All scheduled credits or debits shall be based on evidence documented in the underwriting file at the time the schedule credit or debit is applied."

- Item 6 of the General Rules in Wesco's Schedule Rating Plan states: "The effective date of any schedule credit or debit shall not be any date prior to the receipt in the insurer's office of the evidence supporting the debit or credit."

Wesco's unwillingness to supply evidence required by their Schedule Rating Plan may be because the evidence doesn't exist. Please consider the following:

- There is no consistency in the charges year-to-year for the "Management" category, even though our operation has been consistent. There has been no change in our senior management. We have always cooperated with Wesco and we are clearly committed to loss control. Even so, the "Management" category was charged 5% on the 7/1/2009-10 policy but was not charged on the 7/1/2010-11 or the 7/1/2011-12 policy. The 7/1/2009-10 charge is not based on fact or evidence. This charge must be removed.

- As with the previous bullet, there is no consistency in charges year-to-year in the "Employee" category and there is no basis for the charges. We are unaware of any discrepancies in our selection, training or management processes that would result in increased risk of injury to our employees. Though there are no known discrepancies, and Wesco cannot tell us what discrepancies exist, the "Employee" category was charged 2% on the 7/1/2009-10 and the 7/1/2010-11 policies but there was no charge on the 7/1/2011-12 policy. The same person at the insurance company completed the worksheet for the 7/1/2010-11 and 7/1/2011-12 policies. These charges are not based on fact or evidence and must be removed.

- Our medical facilities didn't change during this three year period. However, the "Medical Facilities" category was charged 5% on the 7/1/2009-10 and the 7/1/2010-11 policies, but there was no charge on the 7/1/2011-12 policy. A charge in this category was never justified. This charge must be removed.

- There is no identified class code peculiarity. Our employees' job content did not change from 7/1/2010-11 to 7/1/2011-12. The same class codes were used on the 7/1/2010-11 policy and on the 7/1/2011-12 policy. However, the "Classification Peculiarities" category was charged 10% on the 7/1/2009-10 and the 7/1/2010-11 policies and 6.5% on the 7/1/2011-12 policy. The same insurance company representative completed the worksheet. This charge must be removed.

Exhibit F - 2

IDOI re Wesco/AmTrust
September 16, 2014

- The "Premises Condition and Care" category was charged 5% on the 7/1/2009-10 policy and again on the 7/1/2010-11 policy, but was removed on our 7/1/2011-12 policy. I again take issue with this. Our employees are not exposed to any conditions that exist in or outside our facility that does not exist within any other organization that shares our mission. These risks are already taken into account within the classification rate. These charges must be removed.

I ask that you require Wesco to provide the evidence supporting the charges and to work with us in good faith to resolve these issues. If Wesco cannot provide the evidence required by their Schedule Rating Plan, it is clear that we were charged for operational discrepancies that did not exist. If Wesco cannot provide the evidence required by their Schedule Rating Plan, I ask that you order Wesco to refund the unfounded overcharges totaling $152,243.00. Thank you for your assistance.

Respectfully,

Dennis D. Carpenter, CPA
President and CEO

Attachments:
    IDOI Complaint Form for 2009-10 Rating Charges
    IDOI Complaint Form for 2010-11 Rating Charges
    IDOI Complaint Form for 2011-12 Rating Charges
    2/27/14 Letter & Requested Derivations/Worksheets for 2011-2012
    3/25/14 Letter & Requested Derivations/Worksheets for 2009-10 & 20010-11
    Wesco/AmTrust Schedule Rating Plan

Exhibit F - 3



**Illinois Department of Insurance**
**Consumer Complaint Form**
**Property & Casualty**
**Auto / Home / Property / Commercial**

Illinois Department of Insurance
320 West Washington Street
Springfield, IL 62767-0001
1-866-445-5364 (toll -free)
TDD 217/524-4872 / Fax: 217/558-2083
insurance.illinois.gov

**Attention:** A complaint may be filed by the insured, their designee or guardian or any other person who is attempting to reconcile a grievance against an insurance company. Any person who files such a complaint or grievance under false pretenses may be subject to criminal or civil action as the law may allow.

### Please Print Clearly

| Name (Mr., Mrs., Mr. & Mrs., Ms., Dr., etc.) | | Date |
| --- | --- | --- |
| Dennis Carpenter | | Sept 11, 2014 |

| Address | City | State | Zip code |
| --- | --- | --- | --- |
| 1902 Fox Drive, Suite B | Champaign | IL | 61820-7378 |

| Home phone | Work phone |
| --- | --- |
| | 217-352-1557 Ext 205 |

| Name of insured (if different from above) | Your relationship to insured person |
| --- | --- |
| Charleston Transitional Facility | President & CEO |

My complaint is against (agency) (insurance company). (Give specific name of insurance company, not group name.)

Wesco Insurance Company

| Address of agency or insurance company | State of purchase |
| --- | --- |
| 874 Walker Road, Suite C. Dover DE 1904 | IL |

| Policy # | Claim # | Date of loss |
| --- | --- | --- |
| WWC3005100 | | |

| Has this complaint been filed before?   ☐ Yes   ☒ No | E-mail Address (provide only if you wish E-mail communication from the Department of Insurance) |
| --- | --- |
| If yes, please state complaint number. | denniscarpenter@ctfillinois.org |

### Cancellation or Nonrenewal for reasons other than non-payment of premium

| Original effective date of policy | Date coverage did/will terminate |
| --- | --- |
| | |

| Is this a new or renewal policy | Type of coverage (auto/home, etc.) |
| --- | --- |
| | |

Do you want a hearing?   ☐ Yes   ☐ No        If yes, we will advise you if a hearing can be held.

If possible, please attach a copy of the notice you received from the insurance company with your complaint form.

### Please state your complaint (attach all supporting documents and use Page 2 if necessary)

See letter and support (attached)

I authorize the Department of Insurance to investigate my complaint and to obtain personal health information, if necessary, to conduct the investigation.

Signature _____ Pres / CEO

**Important Notice:** Complaints filed with the Department of Insurance are confidential records and will not be released to any person or organization except the policyholder, insured or enrollee (or their designee) who originated the complaint or the party against whom the complaint has been filed.

EXHIBIT F - 4



**Illinois Department of Insurance**
**Consumer Complaint Form**
**Property & Casualty**
**Auto / Home / Property / Commercial**

Illinois Department of Insurance
320 West Washington Street
Springfield, IL 62767-0001
1-866-445-5364 (toll -free)
TDD 217/524-4872 / Fax: 217/558-2083
insurance.illinois.gov

**Attention:** A complaint may be filed by the insured, their designee or guardian or any other person who is attempting to reconcile a grievance against an insurance company. Any person who files such a complaint or grievance under false pretenses may be subject to criminal or civil action as the law may allow.

| Please Print Clearly | | | |
|---|---|---|---|
| Name *(Mr., Mrs., Mr. & Mrs., Ms., Dr., etc.)* | | | Date |
| Dennis Carpenter | | | Sept 11, 2014 |
| Address | City | State | Zip code |
| 1902 Fox Drive, Suite B | Champaign | IL | 61820-7378 |
| Home phone | Work phone | | |
| | 217-352-1557 Ext 205 | | |
| Name of Insured (If different from above) | Your relationship to insured person | | |
| Charleston Transitional Facility | President & CEO | | |

My complaint is against (agency) (insurance company). (Give specific name of insurance company, not group name.)

Wesco Insurance Company

| Address of agency or insurance company | State of purchase |
|---|---|
| 874 Walker Road, Suite C, Dover DE 1904 | IL |
| Policy # | Claim # | Date of loss |
|---|---|---|
| WWC3005100 | | |

| Has this complaint been filed before?   ☐ Yes   ☒ No | E-mail Address (provide only if you wish E-mail communication from the Department of Insurance) |
|---|---|
| If yes, please state complaint number. | denniscarpenter@ctfillinois.org |

| Cancellation or Nonrenewal for reasons other than non-payment of premium | |
|---|---|
| Original effective date of policy | Date coverage did/will terminate |
| Is this a new or renewal policy | Type of coverage (auto/home, etc.) |

Do you want a hearing?    ☐ Yes    ☐ No      If yes, we will advise you if a hearing can be held.

If possible, please attach a copy of the notice you received from the insurance company with your complaint form.

**Please state your complaint (attach all supporting documents and use Page 2 if necessary)**

See letter and support (attached)

I authorize the Department of Insurance to investigate my complaint and to obtain personal health information, if necessary, to conduct the investigation.

Signature _____ Pres / CEO

Important Notice: Complaints filed with the Department of Insurance are confidential records and will not be released to any person or organization except the policyholder, insured or enrollee, or their designee who originated the complaint or the party against whom the complaint has been filed.

IL446-0107 (PC) Rev. 6/09

PC Consumer Complaint Form (page 1 of 2)

Exhibit F - 6



**Illinois Department of Insurance**
**Consumer Complaint Form**
**Property & Casualty**
**Auto / Home / Property / Commercial**

Illinois Department of Insurance
320 West Washington Street
Springfield, IL 62767-0001
1-866-445-5364 (toll -free)
TDD 217/524-4872 / Fax: 217/558-2083
insurance.illinois.gov

**Attention:** A complaint may be filed by the insured, their designee or guardian or any other person who is attempting to reconcile a grievance against an insurance company. Any person who files such a complaint or grievance under false pretenses may be subject to criminal or civil action as the law may allow.

| Please Print Clearly | | | |
|---|---|---|---|
| Name *(Mr., Mrs., Mr. & Mrs., Ms., Dr., etc.)* <br> Dennis Carpenter | | Date <br> Sept 11, 2014 | |
| Address <br> 1902 Fox Drive, Suite B | City <br> Champaign | State <br> IL | Zip code <br> 61820-7378 |
| Home phone | Work phone <br> 217-352-1557 Ext 205 | | |
| Name of Insured *(if different from above)* <br> Charleston Transitional Facility | Your relationship to insured person <br> President & CEO | | |
| My complaint is against (agency) (insurance company). *(Give specific name of insurance company, not group name.)* <br> Wesco Insurance Company          (Associated Insurance Company) | | | |
| Address of agency or insurance company <br> 3440 Toringdon Way, Suite 300, Charlotte, NC   28277 | | State of purchase <br> IL | |
| Policy # <br> WWC3005100 | Claim # | Date of loss | |
| Has this complaint been filed before?   ☐ Yes   ☒ No <br><br> If yes, please state complaint number. | | E-mail Address (provide only if you wish E-mail communication from the Department of Insurance) <br> denniscarpenter@ctfillinois.org | |

| Cancellation or Nonrenewal for reasons other than non-payment of premium | |
|---|---|
| Original effective date of policy | Date coverage did/will terminate |
| Is this a new or renewal policy | Type of coverage (auto/home, etc.) |
| Do you want a hearing?   ☐ Yes   ☐ No         If yes, we will advise you if a hearing can be held. | |
| If possible, please attach a copy of the notice you received from the insurance company with your complaint form. | |

| Please state your complaint (attach all supporting documents and use Page 2 if necessary) |
|---|
| See letter and support (attached) |
| |
| |
| |

I authorize the Department of Insurance to investigate my complaint and to obtain personal health information, if necessary, to conduct the investigation.

Signature _____ Pres/CEO

**Important Notice:** Complaints filed with the Department of Insurance are confidential records and will not be released to any person or organization except the policyholder, insured or enrollee (or their designee) who originated the complaint or the party against whom the complaint has been filed.

IL446-0107 (PC) Rev. 6/09

Exhibit F - 8

PC Consumer Complaint Form  (page 1 of 2)



# Illinois Department of Insurance

**PAT QUINN**
Governor

Andrew Boron
Director

October 8, 2014

CTF Illinois
1902 Fox Drive, Suite B
Champaign IL 61820

Re:    Complaint number: IL14-10498
       Wesco Insurance Company

Dear Mr. Carpenter:

Enclosed is a copy of the reply the Department of Insurance has received from the above-named company regarding your complaint.

In review of the company response and NCCI guidelines, it is determined that the company has provided sufficient information to substantiate the application of schedule debits and copies of the worksheets were already provided to you. The amount of the schedule rating factor is subject to the maximum of that listed in the Schedule Rating Table. Any credits or debits applied must be within the range for specific risk characteristic as provided under the plan. The Department does not address what the company has in the file to substantiate the application of the debit. They only need to maintain documentation to support the application of the debit.

The information and documentation presented for review do not provide the Department with a basis for taking regulatory action against the company. It is hoped that this letter and the company response provides the necessary clarification. Every effort has been made to assist you within the limits of our statutory authority.

Very truly yours,

Iris Canto
Insurance Analyst
Consumer Services
(866) 445-5364
(217) 557-6954
(217) 558-2083 (Fax)
consumer_complaints@ins.state.il.us

320 West Washington St.
Springfield IL 62767
(217) 782-4515
insurance.illinois.gov

**Exhibit G - 1**



**AmTrust North America**
An AmTrust Financial Company

<u>SENT VIA EMAIL:</u>
(consumer_complaints@ins.state.il.us)

October 7, 2014

Iris Canto
Illinois Department of Insurance
320 W. Washington
Springfield, IL 62767-0001

| Re: | Complainant/Insured: | Dennis Carpenter / Charleston Transitional Facility |
|---|---|---|
| | IL File #: | IL124-10498 |
| | Carrier: | Wesco Insurance Company |
| | NAIC Co. Code: | 25011 |
| | Policy Numbers: | WWC3005100 (7/1/2009 – 7/1/2010) & |
| | | WWC3013873 (7/1/2010 – 7/1/2011) |

Dear Ms. Canto:

Wesco Insurance Company (Wesco) is in receipt of the complaint filed with the Illinois Department of Insurance by Dennis Carpenter on behalf of Charleston Transitional Facility (CTF).

CTF was insured with Wesco for workers' compensation and employers liability coverage under policy numbers WWC3005100 (7/1/2009 – 7/1/2010) and WWC3013873 (7/1/2010 – 7/1/2011) (Policy(ies)). The Policies were written through Wesco's managing producer, Synergy Coverage Solutions, LLC (Synergy), who accepts business from its sub-agents.

Mr. Carpenter is requesting supporting documentation with respect to the application of the schedule debits indicated on the schedule rating worksheets for three policies: two policies with Wesco and one with Association Insurance Company, which Mr. Carpenter states is owned by Wesco. Please note that Association Insurance Company (AIC) is not owned by or associated with Wesco. According to their website, www.bldrs.com, AIC is currently one of three insurance companies making up Builders Insurance Group. Kathy Wolf is an employee of Synergy, not of Wesco. Synergy, as the managing producer for Wesco, had authority to underwrite the approved business on behalf of Wesco. The derivations completed by Ms. Wolf for the Wesco Policies were done in accordance with Wesco's schedule rating plan.

Wesco is enclosing the worksheets, which contain Synergy's notes with respect to the reasons for applying the schedule debits, which correspond to the exposures noted in the pre-survey report (a copy is attached). All such information has been previously provided to Mr. Carpenter.

Exhibit G - 2



Illinois Department of Insurance
Iris Canto
October 7, 2014

Page 2 of 3

Please see our specific responses to Mr. Carpenter's issues in the complaint:

- *Item 2 of the General Rules in Wesco's Schedule Rating Plan states: "All scheduled credits or debits shall be based on evidence documented in the underwriting file at the time the schedule credit or debit is applied."* – The basis for the schedule debit has always been documented in the underwriting files as evidenced by the attached Pre-survey report and Schedule Rating Worksheets (with comments).
- *Item 6 of the General Rules in Wesco's Schedule Rating Plan states: "The effective date of any schedule credit or debit shall not be any date prior to the receipt in the insurer's office of the evidence supporting the debit or credit."* – The schedule debits were applied with the same effective date as the Policies, which is evidenced on the Schedule Rating Worksheets.

Mr. Carpenter also noted that because Wesco was not consistent in applying the schedule debit for each Policy year under each category, that the amounts resulting from the debits should be removed.

Wesco has timely responded to each of Mr. Carpenter's numerous requests and provided Mr. Carpenter with information regarding the application of the schedule debits to calculate the Premium for the two Wesco Policies. Wesco has already provided Mr. Carpenter with the schedule rating plan filed with and approved by the state of Illinois and an explanation of how the schedule debits were applied. Prior to binding and issuing the Policies, Mr. Carpenter was provided more than adequate time to decline each quote. Instead, Mr. Carpenter accepted the quote for the 2009-2010 Policy (based on information provided by him) and agreed to the terms of the Policy. Furthermore, Mr. Carpenter accepted the renewal quote and renewed the policy for 7/1/2010-2011. As evidenced in the Schedule Rating Worksheets and Pre-survey Report, the schedule debits were applied as noted below in accordance with Wesco's filed Schedule Rating Plan and consistent for each Policy year.

- Management – the 5% debit was applied to the 7/1/2009-10 Policy was because PADT (Post Accident Drug Testing) was not formalized prior to the inception of the Policy. The Pre-survey Report indicates that PADT was a "Critical Recommendation." The debit was not applied to the renewal Policy because CTF implemented PADT prior to the renewal.

- Employee – the 2% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the high percentage of part-time employees. The Pre-survey Report notes that 50% of the total number of employees is part-time. The exposure did not change.

- Medical Facilities – the 5% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the BBP (Blood borne pathogens) and OD (occupational disease) exposures inherent in the business. The Pre-survey Report indicates there was exposure to employees who could be bitten during an assault from combative clients. The exposure did not change.

**Exhibit G - 3**

Illinois Department of Insurance
Iris Canto
October 7, 2014

Page 3 of 3

- <u>Classification Peculiarities</u> – the 10% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the high exposure for patient handling injuries (struck by and lifting). The Pre-survey Report indicates that exposure is high for manual handling exposures: employees physically assist clients, many of whom are non-ambulatory; fatal vehicular accident; attack by consumer. The exposure did not change.

- <u>Premises Condition & Care</u> – the 5% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the slip/trip/fall exposures around facilities. The Pre-survey Report indicates moderate exposure; low controls; water or bodily fluids on bathroom floors throughout residences. The exposure did not change.

Please let me know if you have any further questions or require additional information in regard to this matter. I can be reached at (860) 571-2116 or via email at sandy.maini@amtrustgroup.com.

Sincerely,

Sandy Maini
Contracts Administrator
AmTrust North America, Inc.
on behalf of
Wesco Insurance Company

Exhibit G - 4



**AmTrust North America**
An AmTrust Financial Company

<u>SENT VIA EMAIL:</u>
(consumer_complaints@ins.state.il.us)

October 7, 2014

Iris Canto
Illinois Department of Insurance
320 W. Washington
Springfield, IL 62767-0001

Re:   Complainant/Insured:   Dennis Carpenter / Charleston Transitional Facility
      IL File #:             IL124-10498
      Carrier:              Wesco Insurance Company
      NAIC Co. Code:        25011
      Policy Numbers:       WWC3005100 (7/1/2009 – 7/1/2010) &
                            WWC3013873 (7/1/2010 – 7/1/2011)

Dear Ms. Canto:

Wesco Insurance Company (Wesco) is in receipt of the complaint filed with the Illinois Department of Insurance by Dennis Carpenter on behalf of Charleston Transitional Facility (CTF).

CTF was insured with Wesco for workers' compensation and employers liability coverage under policy numbers WWC3005100 (7/1/2009 – 7/1/2010) and WWC3013873 (7/1/2010 – 7/1/2011) (Policy(ies)). The Policies were written through Wesco's managing producer, Synergy Coverage Solutions, LLC (Synergy), who accepts business from its sub-agents.

Mr. Carpenter is requesting supporting documentation with respect to the application of the schedule debits indicated on the schedule rating worksheets for three policies: two policies with Wesco and one with Association Insurance Company, which Mr. Carpenter states is owned by Wesco. Please note that Association Insurance Company (AIC) is not owned by or associated with Wesco. According to their website, www.bidrs.com, AIC is currently one of three insurance companies making up Builders Insurance Group. Kathy Wolf is an employee of Synergy, not of Wesco. Synergy, as the managing producer for Wesco, had authority to underwrite the approved business on behalf of Wesco. The derivations completed by Ms. Wolf for the Wesco Policies were done in accordance with Wesco's schedule rating plan.

Wesco is enclosing the worksheets, which contain Synergy's notes with respect to the reasons for applying the schedule debits, which correspond to the exposures noted in the pre-survey report (a copy is attached). All such information has been previously provided to Mr. Carpenter.

500 Enterprise Drive • Suite 3C • Rocky Hill, CT 06067
(p) 800.215.7265 • (f) 860.701.1361 • www.amtrustgroup.com

**Exhibit H-1**

Illinois Department of Insurance
Iris Canto
October 7, 2014

Page 2 of 3

Please see our specific responses to Mr. Carpenter's issues in the complaint:

- *Item 2 of the General Rules in Wesco's Schedule Rating Plan states: "All scheduled credits or debits shall be based on evidence documented in the underwriting file at the time the schedule credit or debit is applied."* – The basis for the schedule debit has always been documented in the underwriting files as evidenced by the attached Pre-survey report and Schedule Rating Worksheets (with comments).
- *Item 8 of the General Rules in Wesco's Schedule Rating Plan states: "The effective date of any schedule credit or debit shall not be any date prior to the receipt in the insurer's office of the evidence supporting the debit or credit."* – The schedule debits were applied with the same effective date as the Policies, which is evidenced on the Schedule Rating Worksheets.

Mr. Carpenter also noted that because Wesco was not consistent in applying the schedule debit for each Policy year under each category, that the amounts resulting from the debits should be removed.

Wesco has timely responded to each of Mr. Carpenter's numerous requests and provided Mr. Carpenter with information regarding the application of the schedule debits to calculate the Premium for the two Wesco Policies. Wesco has already provided Mr. Carpenter with the schedule rating plan filed with and approved by the state of Illinois and an explanation of how the schedule debits were applied. Prior to binding and issuing the Policies, Mr. Carpenter was provided more than adequate time to decline each quote. Instead, Mr. Carpenter accepted the quote for the 2009-2010 Policy (based on information provided by him) and agreed to the terms of the Policy. Furthermore, Mr. Carpenter accepted the renewal quote and renewed the policy for 7/1/2010-2011. As evidenced in the Schedule Rating Worksheets and Pre-survey Report, the schedule debits were applied as noted below in accordance with Wesco's filed Schedule Rating Plan and consistent for each Policy year.

- <u>Management</u> – the 5% debit was applied to the 7/1/2009-10 Policy was because PADT (Post Accident Drug Testing) was not formalized prior to the inception of the Policy. The Pre-survey Report indicates that PADT was a "Critical Recommendation." The debit was not applied to the renewal Policy because CTF implemented PADT prior to the renewal.

- <u>Employee</u> – the 2% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the high percentage of part-time employees. The Pre-survey Report notes that 50% of the total number of employees is part-time. The exposure did not change.

- <u>Medical Facilities</u> – the 5% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the BBP (Blood borne pathogens) and OD (occupational disease) exposures inherent in the business. The Pre-survey Report indicates there was exposure to employees who could be bitten during an assault from combative clients. The exposure did not change.

**Exhibit H-2**

Illinois Department of Insurance
Iris Canto
October 7, 2014

Page 3 of 3

- Classification Peculiarities – the 10% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the high exposure for patient handling injuries (struck by and lifting). The Pre-survey Report indicates that exposure is high for manual handling exposures: employees physically assist clients, many of whom are non-ambulatory; fatal vehicular accident; attack by consumer. The exposure did not change.

- Premises Condition & Care – the 5% debit was applied to **both** the 7/1/2009-10 and 7/1/2010-11 Policies because of the slip/trip/fall exposures around facilities. The Pre-survey Report indicates moderate exposure; low controls; water or bodily fluids on bathroom floors throughout residences. The exposure did not change.

Please let me know if you have any further questions or require additional information in regard to this matter. I can be reached at (860) 571-2116 or via email at sandy.maini@amtrustgroup.com.

Sincerely,

Sandy Maini
Contracts Administrator
AmTrust North America, Inc.
on behalf of
Wesco Insurance Company

**Exhibit H-3**

## AMTRUST NORTH AMERICA
## ILLINOIS SCHEDULE RATING WORKSHEET

ELIGIBILTY: Any risk.

| Risk Name: | Charleston Transitional Facility |
|---|---|
| Risk Address: | 1902 Fox Drive, Champaign, IL 61820 |
| Policy Number: | WWC 3006100 |
| Policy Effective Date: | 7/1/09 |
| Effective/Expiration Date of Schedule Rating Applicability: | 7/1/09-10 |
| Carrier: | Wesco Insurance Company |
| Carrier Code: | 26135 |
| Risk Identification Number: | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| Management Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 10% | | 5 | PADT not formalized |
| Employees Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | High % of PT employee count |
| Safety Devices Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 10% | | | |
| Medical Facilities Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | BBP and other OD exposures |
| Classification Peculiarities Exposures not contemplated in class, exposures less or more than contemplated in class. NOC classes. | 10% to 10% | | 10 | High exposure for patient handling injuries (struck by and lifting) |
| Premises C Age, mainte means of e | | | 5 | Slip/trip/fall exposures around their facilities |
| Total | | | 27 | Maximum=50% |

*Schedule rating w/is for our file for per D K*

Illinois Estim

Underwriter

$75,037

Total Schedule Rating Modification
6-17-09

Data Completed

9/22/08

**Exhibit H-4**

# AMTRUST NORTH AMERICA
## ILLINOIS SCHEDULE RATING WORKSHEET

ELIGIBILTY:

| Risk Name: | Charleston Transitional Facility |
|---|---|
| Risk Address: | 1902 Fox Drive, Champaign, IL 61820 |
| Policy Number: | WWC 3013873 |
| Policy Effective Date: | 7/1/10 |
| Effective/Expiration Date of Schedule Rating Applicability: | 7/1/10-7/1/11 |
| Carrier: | Wesco Insurance Company |
| Carrier Code: | 25011 |
| Risk Identification Number: | 121108275 |

| Category | Available Range of Modification (Credit to Debit) | Credit Applied | Debit Applied | Reason/Basis |
|---|---|---|---|---|
| **Management** Cooperation with insurance company, commitment to loss control, knowledge of business, labor relations. | 10% to 10% | | | |
| **Employees** Selection, training, supervision, age, basis of remuneration, turnover, seasonal, part-time, skilled or un-skilled. | 10% to 10% | | 2 | High % of PT employee count |
| **Safety Devices** Usage of back belts, safety glasses, ear plugs, machine guarding, lift tables. | 10% to 10% | | | |
| **Medical Facilities** Usage of eyewash station, first aid station or kits, nurse on premises. | 10% to 10% | | 5 | BBP and other OD exposures |
| **Classification Peculiarities** Exposures not contemplated in class, exposures less or more than contemplated in class, NOC classes. | 10% to 10% | | 10 | High exposure for patient handling injuries (struck by and lifting) |
| **Premises Condition and Care** Age, maintenance, fire prevention, means of egress, housekeeping. | 10% to 10% | | 5 | Slip/trip/fall exposures around their facilities |
| **Total** | | | 22 | Maximum=50% |

$312,988

$56,209

Illinois Estimated Standard Premium

Total Schedule Rating Modification

Kathy Wolf

5-4-10

Underwriter

Date Completed

9/22/06

**Derrick Killian**

| | |
|---|---|
| From: | Phil Gresens |
| Sent: | Wednesday, April 08, 2009 2:53 PM |
| To: | Derrick Killian |
| Cc: | Jim Thomas; Ken Gesner |
| Subject: | 2009-04-01 Charleston Transitional Facility Pre-Survey Report |
| Attachments: | 2009-04-01 Charleston Transitional Facility Pre-Survey Report.doc |

Hi Derrick,

This pre-survey report is for an account Ron Bensyl wanted us to meet with while we were in IL last week. You haven't sent me a request for this but I wrote up a report based on our meeting with them. It looks real good overall. The contacts we met with have a real good attitude. They use light duty regularly and have good hiring practices, including Fit for Duty testing.

However, there are 80 employees in a union for their locations in the south suburbs of Chicago. I could very easily give those 8 locations a lot of LP service since all of those locations are very close to where my parents live (within 20 minutes). Three are within a 5 minute drive.

They don't conduct PADT but seem open to implementing this.

Please let me know if you have any questions.

Thanks,

Phil

reporting issues

FMLA    6 v. 12 week

questionable claims

2005 -    $63k  - poor investigation

2004 -   Boatman $145k b/t 2 claims   05 + 06

2007-    MVA -subrogation  $97k
                              $305k

1



## SYNERGY
COVERAGE SOLUTIONS

### Pre-Survey Report

| Employer: | Survey Date: | Due Date: | Report Date: |
|---|---|---|---|
| Charleston Transitional Facility | 4/1/09 | 6/1/09 | 4/8/09 |

| Location(s) Surveyed: | Home Office Location (if different): |
|---|---|
| 1902 Fox Drive, Suite B<br>Champaign, IL 61820-7378 | |

| Type of Operation at Location Surveyed: | | |
|---|---|---|
| Corporate offices for developmental disability program provider agency | | |

| Name & Title of Person(s) Interviewed: | Phone #: | Email: |
|---|---|---|
| Mark Klaus – President & CEO<br>Christie Daly | 217-352-1557 | markklaus@ctfillinois.org |
| Agency: GTPS Insurance | Phone # | Email/Fax: |
| Agency contact:<br>Ron Bensyl | 217-373-6856 | rbensyl@gtpsins.com |
| Underwriter:<br>Derrick Killian | Phone #:<br>704-927-7028 | Email/Fax:<br>dkillian@synergyinsurance.net |
| Consultant:<br>Phil Gresens, Loss Prevention | Phone #:<br>919-621-1598 | Direct Premium:<br>+$300,000 |

### A: Opinion of Risk

1) The risk is <u>Satisfactory</u> for its industry based on loss control exposures.

2) This opinion is based upon the following briefly identified facts or observations:

Jim, Ken, and I meet with Ron Bensyl and the contacts listed above. Very good attitude exhibited by the contacts. They do use light duty jobs for injured employees. Light duty jobs used in the past include clerical jobs such as filing, copying, and answering phones. They do have a formal policy. They do not conduct post accident drug testing but are open to implementing this program. Good hiring practices in place including pre hire physicals. They do conduct safety orientation for new employees and require existing employees to go through this training each year. They also have a safety committee that meets every other month. They are accredited by CARF, Illinois Department of Human Services, and by several Chambers of Commerce.

### B: Recommendations for Risk Improvement

#### Critical Recommendations

**Rec. 09-01:** <u>Post Accident Drug Testing</u> –*Implement a post accident drug testing program which requires a drug test for any work related accident resulting in an injury requiring medical attention. This program must be formal and communicated to all existing and new employees.*

#### Non-Critical Recommendations

None at this time.

☒ Management **agrees** with recommendations.

**Exhibit H-7**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

**C: Description of Operations**

1) **Overview Of Management/ History Of Company[1]**

Charleston Transitional Facility began in 2001. They have residential, vocational, and developmental training programs for developmentally disabled individuals. They are a union operation (locations in the south suburbs of Chicago – approximately 80 employees). They are a non-profit agency. 60% of their group home residents are not ambulatory. 60% are profoundly mentally retarded. The average age of group home residents is 40 years old. They are growing at a rate of 20% annually. A lot of their funding is from the University of Illinois, Eastern Illinois University, and Southern Illinois University.

Information from their website at www.ctfillinois.org:

Residential Programs:

CTF believes that adults with developmental disabilities deserve equal opportunity in the communities where they live. To help achieve this goal, CTF provides as close to a natural home environment as possible integrated into the community. These *Community Integrated Living Arrangements* (CILAs) offer 24-hour supervision and assistance by staff trained in a DHS-approved curriculum. Each of the 23 CILAs is home to 6-8 individuals with developmental disabilities.

There are 23 group homes. There are 10 in Charleston, 1 in Mattoon, 1 in Atlanta, 2 in Lincoln, 8 in the south suburbs of Chicago (Homewood, Flossmoor, Country Club Hills, Park Forest, Crete), and 1 in Sumner.

CTF offers a person-centered planning process by which services are tailored to the needs of the individual. Each resident works to improve their daily living skills, money management, community integration, vocational opportunities, and other skill areas.

Occupational therapy, physical therapy, speech and language development, and behavioral programming are also available. A *Qualified Human Services Professional* (QHSP) and CILA Supervisor oversee each CILA, and nurses are on call 24 hours a day to provide monitoring and follow-up for medical needs.

Intermittent CILA Program:

Individuals who qualify can live on their own and receive services as needed from CTF through the *Intermittent CILA Program*. Through this program, adults with mild developmental disabilities live independently in a home or apartment, sometimes with one or more roommates.

CTF provides case management, training, and assistance to the individuals so they can maintain and further develop their independence. Services provided to these individuals by CTF staff typically include transportation, assistance with medical needs, making and keeping appointments, grocery shopping, paying bills, and similar activities.

Home Based Services:

For children and young adults who live at home with their families, CTF offers home-based services and supports. Direct Service Personnel from CTF are matched to families based on experience and compatibility, and spend an average of 15 hours per week providing supervision, instruction, and guidance to help the

---
[1]

**Exhibit H-8**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

participant develop skills and move towards independence.

Active treatment is the focus, and typical examples include behavior management, goal setting, living skills development, and community integration. A *Qualified Mental Retardation Professional* QMRP also provides overall case management and supervises the Direct Service Personnel.

Development Training Programs:

The CTF Developmental Training (DT) Programs strive to provide environments that are supportive of each individual's unique needs and abilities, and each DT program provides skills training to enhance individuals' daily living. The skilled support that individuals receive addresses and enhances various skills, personal goals, and training needs.

Some examples of supports and services provided by the DT program include independent living skills training, sensory enhancement programs, communication skills assessment and training, recreation and leisure, fitness and exercise, and vocational training.

Day Training Programs

CTF also has Seniors DT programs at each day program location that provide supports and services specifically for individuals who are ready to retire from a work setting due to age, health, or personal choice. The Seniors program places an emphasis on recreation and leisure while assisting individuals with the development of beneficial independent living, community, social, and daily living skills, as well as occupational and physical therapy services.

CTF operates five DT programs in Illinois for adults with developmental disabilities. These programs are located in Charleston (two programs), Homewood, Lawrenceville, and Olney, Illinois.

Focus on Individuality

CTF uses a person centered approach in order to meet the needs of everyone we serve. With input from each individual we serve and their Developmental Instructor, a customized Individual Support Plan is created for that individual. Emphasis is placed on the uniqueness of each individual and their needs, promotion of independence through choice, and training in life skills in conjunction with therapeutic services.

Eligibility

To be eligible to attend a CTF Day Training program, an individual must meet the following requirements:

- Be a minimum of 18 years old
- Be diagnosed as developmentally disabled
- Live in the State of Illinois
- Require daily assistance and supervision from trained and caring staff

Vocational Training Programs:

CTF's vocational program is an essential component of the support and services CTF provides to individuals with developmental disabilities. For most of us, being a member of our community means having a

**Exhibit H-9**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

job and going to work; people with disabilities are no exception.

For those who wish to and are capable of working, CTF seeks to provide a variety of work opportunities that give individuals earned income as well as the satisfaction that comes from gainful employment. Depending on the needs and abilities of the individual, job opportunities may be provided on-site at the day program, or off-site at local businesses.

Elements of Vocational Training Program

Individuals participating in the vocational program receive job skill education and assessment, job coaching, and pre-vocational services as needed. Through comprehensive training in specific job competencies and in related skills critical to job success, each individual's employability is maximized. Vocational options include the following:

- In-house subcontract work at the CTF day programs
- Community-based competitive employment
- Supported job placement

CTF provides the training and level of supervision needed to ensure successful integration and the opportunity for individuals to progress in their vocational goals.

Employer and Contractor Partners

CTF's vocational program is a success because of community members and business owners who understand the importance and value of providing paid vocational opportunities to people with developmental disabilities. Positions in the service industries, product packaging contracts, and participation in CTF's recycling program are just a few of the ways community member and business owners have helped ensure that developmentally disabled adults are able to engage in paid employment.

Autism Programs:

CTF was officially chosen as one of the seven new regional Autism Service Centers for the State of Illinois. The center is located at 689 Castle Drive in Charleston, Illinois. The doors officially opened on February 1, 2008.

Services at the center include, but are not limited to:

- Diagnostics
- Resources Room
- Developmental Screening
- New Diagnosis Parent Orientation Programs
- Professional & Educator Training Programs
- Consultations, and Social Skills Groups based on Model Programs developed by The Autism Program

Our regional coverage area will cover East Central Illinois. CTF is very excited to be an integral part of The Autism Program Service Network's innovative approach to providing services to individuals with autism and their families.

**Exhibit H-10**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

2) **Brief Operations / Process Flow[2]**

See above.

3) **Employee Overview[3]**

Risk has a total of 400 employees. There 200 full timers and 200 part time employees. 317 of their employees are paid by the hour and 83 are salaried. Average pay is $9 an hour. Turnover can be high at new group homes. There is one shift except for the residential facilities, where there are 3 shifts. There are no temporary or seasonal employees. There is one employee over 65 and none under 18 years of age. The average age of their employees is 35. Risk does not have any non-English speaking employees. There are approximately 8 employees at each group home.

Some college students from Eastern Illinois University may be used as interns.

**D. Loss Control & Risk Management Practices[4]**

1) **Hiring Practices**

They require a completed application; conduct interviews; conduct reference checks, a criminal background check, and a pre hire drug test. They also conduct an MVR check if the employee drives for company business. They also conduct a post offer physical. The contacts were not sure if a post offer medical questionnaire is completed but it is likely since a post offer physical is conducted. Fit for Duty testing is conducted. This was started 6 months ago.

Group health insurance is available to their full time employees. 102 of their 200 full time employees have this coverage. The employer pays for 80% of the premium for single coverage. They also offer long term disability to upper management employees and short term disability to salaried employees. The employer pays for both long and short disability.

2) **Orientation and safety program**

All new employees have to go through new employee orientation. All employees are required to go through crisis prevention intervention training (CPI), blood borne pathogens, universal precautions, driver training, back safety, and gait belt use training. All training is documented. This training lasts up to two weeks and includes on-the-job training.

Employees are given recurring training on the above items as well during monthly in-service training sessions. Annual CPI refresher training is done as well.

There is a formal safety committee which meets every other month. There are 10 members on this committee. They do review accident reports. Safety inspections are done by maintenance employees or the group home supervisor.

3) **Accident Investigation**

There is an accident investigation report that is completed by the injured employee's supervisor. They do try and determine the cause of the accident or injury and determine what corrective action(s) is needed.

4) **Early Return to Work**

The contacts said there is a formal ERTW policy in place. They do use light duty jobs. When I asked if they offer light duty, the contact said "yes, 9 times out of 10". Employees are aware that light duty jobs are available. They

**Exhibit H-11**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

send a note to the treating physician to advise the treating physician of the availability of light duty. Light duty jobs used in the past include filing, copying, and answering phones. There is no limitation to the length of any of their light duty jobs.

**5) Claims Management**

All injury reports are faxed to Christie in their corporate office who files the claim with the WC carrier. All of their losses are tracked using a spreadsheet. Mr. Klaus said Christie does a very thorough job of tracking their losses by location, type, etc. They would maintain a good rapport with their WC carrier. They do not accompany the injured employee to the treating physician. They have to have their injured employees treated at various facilities, but use Ingalls Occupational Health in Harvey for their locations in the south suburbs of Chicago and Sarah Bush Health System for their injuries in Charleston and Mattoon. An Employee's Refusal of Medical Treatment form is used.

Note: Employees may be forced into FMLA when out with an on-the-job injury.

**6) Drug and Alcohol Testing**

They do not conduct any drug testing except for pre hire. The contacts said they would consider implementing post accident drug testing.

**7) Management Commitment and Accountability**

Annual performance appraisals are conducted. Safety is a part of these appraisals and is weighted. The contacts were not sure of the exact weight.

**8) Any other significant information**

Nothing noted.

## E. Loss Analysis & Comparison

I don't have any loss data for this account currently.

## F. Hazards & Controls

**1) Manual material handling exposures (NA ☐)**

Exposure is high and controls are satisfactory. Employees do physically assist clients as many are severely retarded or non ambulatory. However, training is provided to those who perform client lifts during new employee orientation and during in-service training sessions. They even had Ingalls Hospital conduct back safety training for staff who works at the facilities in the south suburbs of Chicago. 83 employees attended this training. Mechanical lifts are in place where needed according to the contacts. Lifts can exceed 100 lbs.

**2) Slip, trips, & falls / Fall from elevation exposures (NA ☐)**

Exposure is moderate, controls are low. Employees may be exposed to weather elements as they arrive to and leave from work. There is occasional water or bodily fluids on bathroom floors or throughout residences. They are looking at requiring the use of shoes with grip type soles.

**3) Machinery exposures (NA ☐)**

**Exhibit H-12**



**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

Exposure is low and controls are few. Only exposure to machinery is the occasional use of power tools by maintenance employees.

**4) Occupational disease / Industrial hygiene / Mold Exposure** (NA ☐)

OD – Exposure is moderate and controls are good. There is some exposure to employees who could be bitten by a client during an assault. They do provide BBP training to employees who may be exposed to clients. A blood borne pathogens policy is in place.

IH – Exposure is low, controls are good. Minimal exposure to some cleaning chemicals.

Mold – minimal to no exposure.

**5) Cumulative trauma** (NA ☐)

Exposure is low and controls are moderate. There may be exposure to employees in their offices using PCs, but they can work at a moderate, self-controlled pace.

**6) Catastrophic exposures** (NA ☐)

One or more employees involved in a fatal vehicular accident. Also an attack by a consumer causing serious injuries.

**7) Any other significant exposures** (NA ☐)

Biggest loss exposure is from combative clients. They do require employees who interact with these consumers to go through Crisis Intervention Prevention training when hired and every year thereafter.

### G: Automobile Exposures (NA ☐)

Risk has 50 to 60 vehicles. There are 1 to 2 buses, 5 to 6 autos, 1 to 2 pick-up trucks, and the remaining vehicles are 15 passenger vans with lifts. They are used within a 5 mile radius mainly. The vehicles at group homes downstate (Lawrenceville and Olney) may travel further out – within a 40 mile radius.

The buses do require a CDL to operate. There are 4 to 5 employees who have a CDL. They hope to get rid of these two vehicles in the near future.

All maintenance is done by a local garage or dealership.

MVRs are checked each year by their insurance agency. They will follow the agency's recommendations for an employee has too many points or a serious violation.

Defensive driver training is done. This includes a road test. This is done by an outside firm.

### H: Service Recommendations

**1) Kind(s) Of Service Recommended** [6]

Assist with implementing a PADT policy. Assist risk with on-site training. Conduct hazard assessments. Review loss data with them on a regular basis.

Exhibit H-13

 

**SYNERGY**
COVERAGE SOLUTIONS

## Pre-Survey Report

2) **Recommended Service Frequency[9]**
   Visit 4 to 6 times annually.

3) **If No Service Describe Reasoning**

**J. Additional Comments[10]**

- Looks good overall.

---

| Page 8 | For Internal Use Only |
|--------|----------------------|

Exhibit H-14

# FILED

SIXTH JUDICIAL CIRCUIT
7/24/2018 3:47 PM
By: JH



*Katie M. Blakeman*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

IN THE CIRCUIT COURT
SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

## SUMMONS IN A CIVIL CASE

CTF ILLINOIS f/k/a CHARLESTON
TRANSITIONAL FACILITY, an Illinois
not-for-profit corporation,

CASE NUMBER: **2018L 000126**

V.

ASSIGNED JUDGE:

Hon. Jason Bohm

WESCO INSURANCE COMPANY,

JURY DEMAND

TO: (Name and address of Defendant)

Wesco Insurance Company
c/o Amtrust Financial Services, Inc.
233 N. Michigan Avenue
Chicago, Illinois 60601

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Rathje Woodward LLC
300 E Roosevelt Road
Suite 300
Wheaton, Illinois 60187

an answer to the complaint which is herewith served upon you, _____30_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable
period of time after service.

7/23/2018

*Katie M. Blakeman*      BP

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE 7-24-18 |
|---|---|
| NAME OF SERVER *(PRINT)* Charles L. Philbrick | TITLE Attorney for Plaintiff |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☑ Other (specify): Served via electronic mail on July 23, 2018 and service accepted by agreement by Michael Rasnick, also on July 23, 2018.

_____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  7-24-18
_____
Date

*Signature of Server*

300 E. Roosevelt Rd., Wheaton, IL 60187
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



FILED
SIXTH JUDICIAL CIRCUIT
7/24/2018 3:49 PM
By: JH

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## IN THE CIRCUIT COURT
## SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

CTF ILLINOIS f/k/a CHARLESTON )
TRANSITIONAL FACILITY, an Illinois )
not-for-profit corporation, )
                                           )
               Plaintiff, )
                                            )    Case No.:2018 L 000126
     v. )
                                             )
WESCO INSURANCE COMPANY, )   Jury Demanded
                                            )
             Defendant. )

## NOTICE OF FILING

To:   Wesco Insurance Company
       c/o Amtrust Financial Services, Inc.
       Attn: Michael Rasnick
       233 N. Michigan Avenue
       Chicago, IL 60601
       Michael.rasnick@amtrustgroup.com

     PLEASE TAKE NOTICE, that on the 24th day of July, 2018, we electronically filed Plaintiff's Proof of Service, a copy of which is attached and hereby served upon you.

                                    Respectfully submitted:

Dated: July 24, 2018          By: /s/Charles L. Philbrick
                             Charles L. Philbrick(ARDC# 6198405)
                             Rathje Woodward LLC
                             300 East Roosevelt Road, Suite 300
                             Wheaton, IL 60187
                             Tel. 630-668-8500
                             Fax. 630-510-4931
                             cphilbrick@rathjewoodward.com



## CERTIFICATE OF SERVICE

I, Charles L. Philbrick, an attorney, certify that a true and correct copy of Plaintiff's Proof of Service, was served upon all parties and/or attorneys of record via electronic mail on July 24, 2018 to:

Wesco Insurance Group
c/o Amtrust Financial Services
Attn: Michael Rasnick
233 N. Michigan Avenue
Chicago, IL 60601
Michael.rasnick@amtrustgroup.com

/s/Charles L. Philbrick

2